## The Pennsylvania Railroad Company *versus* Books.

1. In an action for injury to the plaintiff whilst on the defendants' cars by collision with another train, evidence of the habits and competency of the conductor of the latter train is pertinent.

2. When a habit of intoxication in a conductor is shown, it raises a presumption of negligence in case of accident.

3. Evidence of statements by a flagman as to how far he had gone back to flag a coming train was inadmissible.

4. What an agent says while acting within the scope of his authority is admissible against his principal as part of the *res gestœ*, but not statements made by him at any other time.

5. Declarations by officers of a corporation rest upon the same principles as apply to other agents.

6. In an action for injury by negligence, evidence of the number of the plaintiff's family, his habits, industry and economy is inadmissible.

7. That the plaintiff was riding on an employee's pass was a presumptive admission by him that he was a servant of the company.

8. After stating certain rules as to the measure of damages the court said: "These we think would be fair rules to ascertain the measure of damages the plaintiff would be entitled to in this case; but if you can find any better ones than those suggested, you are at liberty to adopt them, as the measure and amount of damages are entirely for you to ascertain, under all the evidence and circumstances in the case." *Held* to be error.

9. In a suit by the party injured, the damages may include a reasonable compensation for suffering, expense of medical attendance and loss of time from confinement, but unless the injury has been wantonly inflicted, the damages must be strictly compensatory.

10. Every one riding in a railroad car is presumed to be there lawfully as a passenger, and the onus is on the carrier to prove that he is a trespasser.

February 26th 1868. Before Thompson, C. J., Strong, Agnew and Sharswood, JJ. Read, J., at Nisi Prius.

Error to the Court of Common Pleas of *Snyder county*.

This was an action brought by Solomon Books against the Pennsylvania Railroad Company for injuries received on a train of the defendants by the negligence of their servants. The action was brought on the 8th of April 1865, in Juniata county, and removed to Snyder county.

The declaration in one count charged that the defendants by their servants on the 21st of September 1864, so negligently managed their locomotives, cars, &c., that a collision occurred, that the plaintiff " who was then on a car of the defendants, was by the negligence, &c., of the defendants, their servants," &c., injured, &c. The second count alleged that the plaintiff was " a passenger" and is otherwise as the first.

On the day named in the declaration a serious accident occurred

on the Pennsylvania Railroad at Thompsontown by a collision of a passenger train with a coal train.    The plaintiff was mail-agent between Harrisburg and Altoona and being on the passenger train at the time was amongst those who were injured.

On the trial the plaintiff offered to prove that the conductor of the freight train which caused the injury, was not a safe man, that he would get drunk and was incompetent to take charge of a train.

The plaintiff proposed to ask a witness "if the flagman showed him how far he had gone back to flag the fast-line."

He also proposed to ask a witness what Mr. Lombaert, a vice-president of the company said about the Railroad Company receiving pay for carrying the mails.

He also proposed to prove the number of the family of the plaintiff, his circumstances, his occupation, that it is a profitable one, his habits, his industry, and his health before this accident, and his economy.    The foregoing offers were admitted against the objection of the defendants and several bills of exception sealed.

Defendants proposed to prove that before and at the time of the accident, "great difficulty was experienced in procuring the services of the best men for various positions on the road; and this, by reason of the draft that was made for men during the war, depriving the company of large numbers of their most experienced men."

They also offered in evidence an employee's pass to Solomon Books, route agent, from September 1st to November 1st 1864; to show that plaintiff sustained the relation of an employee to the company by accepting the pass, and that it authorized him to ride under it when in the discharge of his duty as route agent.    These offers were rejected on the plaintiff's objection and several bills of exceptions sealed.

The defendants requested the court to charge:

3. That plaintiff having failed to show how he was on the cars, if he was on at all, that he purchased a ticket or paid his fare, the defendants would not be liable as common carriers under the pleadings, and the verdict should be for defendants.

4. If plaintiff was on the cars without payment of fare, or permission of the agents of the company having authority to grant it, the defendants would not be liable in this action, although the conductor neglected to stop the train and put the plaintiff off.

5. That if plaintiff was on the car without payment of fare, there would be no liability on the part of defendants, unless it was occasioned by the want of ordinary care in some of the employees of the company, and the burden of showing negligence is on the plaintiff.

7. That if from the evidence, the jury should believe that the plaintiff stood in the relation of employee to the defendants, then it is immaterial whether the employee, whose alleged

[Pennsylvania Railroad Co. *v.* Books.]

negligence caused the injury to the plaintiff, was skilful or unskilful, prudent and cautious, or careless and negligent.    Negligence on part of his fellow employee being one of the ordinary risks of the service in which the plaintiff has engaged, and on that state of facts the plaintiff cannot recover.

10.  That if the court should be of opinion that plaintiff may recover, then the measure of damages would be the pecuniary loss he has sustained in consequence of the injuries received.

The court (Woods, P. J.) charged, amongst other things :—

"In assessing damages against a railroad company for injuring a passenger, the jury must place a money value on his health. The law can furnish no definite measure for damages that are in their nature essentially indefinite.    In arriving at the amount of damages the plaintiff would be entitled to, it would be right and proper for you to consider the age, habits, former health and occupation of the plaintiff, and what effect the injury to him would have on his probable gains and accumulations.    If it would have the effect of decreasing his earnings, it would be proper for you to take that into your consideration, in making up the amount of damages he has sustained.    In this connection, it would be proper for you to consider whether the injury to the plaintiff is permanent, or only temporary ; and if not permanent, how long it will probably be before he is restored to his ordinary health and strength. If his health is permanently injured, then you might estimate how long he would probably live under ordinary circumstances, had he not been injured ; and what would be the difference in his accumulations as he is now, and what they would have been if he had not been hurt, but still had his ordinary health and strength.    If from the testimony you should be of the opinion he was not permanently injured, then it would be proper to inquire how long and to what extent his injuries would unfit him for labor, and what would be the probable difference in his accumulations as he now is, and what they would have been had he not been hurt.    These we think would be fair rules to ascertain the measure of damages the plaintiff would be entitled to in this case ; but if you can find any better ones than those suggested, you are at liberty to adopt them, as the measure and amount of damages are entirely for you to ascertain, under all the evidence and circumstances in the case."

The court denied the defendants' 3d and 4th points.

In answer to the 5th, 7th and 10th points the judge said :—

5.  "If the plaintiff was on the cars without paying his fare, and refused to pay it, this would be so.    But this is not to be presumed without proof."

7.  "This is so, but there is no evidence that he was an employee of the railroad company, but just the contrary."

10.  "This is not the entire measure of damages you can give

the plaintiff, if you believe this occurred from the gross negligence of the defendants' agents."

There was a verdict for the plaintiff for $——.

The defendants took a writ of error.

Their assignments of error were:

1. The admission of evidence as to the incompetency of the conductor.

2. Admission of evidence of statements made by the flagman.

3. Admission of evidence of statements made by Mr. Lombaert.

4. Admission of evidence as to plaintiff's circumstances, &c.

5. Excluding evidence as to the difficulty of procuring hands.

6. Excluding the plaintiff's pass.

7. The charge of the court on the subject of damages, including the answer to the defendants' 10th point.

8. The answers to their 3d, 4th and 5th points.

9. The answer to their 7th point.

*T. Cuyler* (with whom were *Miller & Doty*), for plaintiffs in error.—On the 1st assignment they cited Frazier *v.* The Railroad Company, 2 Wright 110; 1 Greenl. Ev., § 461, 9. On the 4th, 7th and 8th assignments they cited Heil *v.* Glanding, 6 Wright 493; Pennsylvania Railroad *v.* Zebe, 9 Casey 318; Same *v.* Vandever, 12 Id. 303. On the 6th and 9th assignments they cited Frazier *v.* Railroad, *supra;* Ryan *v.* Cumberland Valley Railroad, 11 Harris 384; Morgan *v.* Vale of Neath Railway, Law Rep. 1 Q. B. 149; Tunney *v.* Midland Railway, Id. 1 C. B. 291.

*Parker* and *G. F. Miller*, for defendant in error, as to 2d assignment cited Redfield on Railways, 290, 294 note g, 382–385. As to 4th assignment they cited Pennsylvania Railroad *v.* McClosky, 11 Harris·526; Catawissa Railroad *v.* Armstrong, 2 P. F. Smith 283. As to 7th assignment, Heil *v.* Glanding, Pennsylvania Railroad *v.* Zebe, Same *v.* Vandever, *supra;* Pennsylvania Railroad *v.* Kelly, 7 Casey 372. As to 8th assignment, Ohio and Mississippi Railroad *v.* Muhlin, 3 Am. Law Reg. N. S. 312 (30 Ill.); Railroad *v.* Norton, 12 Harris 465; 1 Redfield on Railways, 326, note 6. As to 5th assignment, 1 Redfield 384, 385. As to 6th assignment, Pennsylvania Railroad *v.* Henderson, 1 P. F. Smith 315; Philadelphia and Reading Railroad *v.* Deby, 14 Howard 468.

The opinion of the court was delivered, March 2d 1868, by

Sharswood, J.—This was an action by the plaintiff below against the defendants, the plaintiffs in error, to recover damages for injuries alleged to have been occasioned by the negligence of their servants. Nine errors have been assigned, which it is our duty to consider.

[Pennsylvania Railroad Co. v. Books.]

The 1st is, that the court erred in admitting testimony touching the habits and competency of the conductor of a coal train, in the employ of the company, which had run into the passenger train and caused the injury. This assignment of error was not pressed, and properly. If by direct evidence it appeared that the conductor was a man of intemperate habits, it would cast upon the defendants the burthen of proving that he was not intoxicated at the time, and had used proper care. It is certainly incumbent upon railroad companies to employ none but sober men on their roads. Where a habit of intoxication in a conductor is shown, it raises, in the case of an accident, a presumption of negligence, which stands until it is rebutted.

The 2d assignment of error is that the learned judge erred in admitting evidence of statements of the flagman made subsequently to the accident. The plaintiff proposed to ask a witness if the flagman showed him how far he had gone back to flag the fast-line. This was admitted, and an exception sealed. The rule is well settled, that what an agent says while acting within the scope of his authority, is admissible against his principal, as part of the res gestæ, but not statements or representations made by him at any other time. Shelhamer v. Thomas, 7 S. & R. 106; Levering v. Rittenhouse, 4 Whart. 130; Jordan v. Stewart, 11 Harris 244. The admissions of an agent, not made at the time of the transaction, but subsequently, are not evidence; thus the letters of an agent to his principal, containing a narration of the transaction in which he had been employed, are not admissible against the principal. Hough v. Doyle, 4 Rawle 291; Clark v. Baker, 2 Whart. 340. Naked declarations, which are not part of any res gestæ, are mere hearsay, like words spoken by a stranger. Patton v. Minesinger, 1 Casey 393. The flagman himself was a competent witness, but his statements of what he had done were clearly incompetent. There was error therefore in the admission of this evidence.

The 3d error assigned is in admitting evidence of statements made by the vice-president of the company. The plaintiff offered to ask a witness what Mr. Lombaert said about the railroad company receiving pay for carrying the mails. This was objected to, but the objection was overruled and an exception taken. Declarations made by the officers of a corporation rest upon the same principles as apply to other agents. In a case where the admissions of the trustees of a religious corporation were offered in evidence, C. J. Tilghman said: "An agent is authorized to act; therefore his acts, explained by his declarations during the time of action, are obligatory on his principal; but he has no authority to make confessions after he has acted, and therefore his principal is not bound by such confessions." Magill v. Kauffman, 4 S. & R. 321; Spalding v. The Bank of Susquehanna

[Pennsylvania Railroad Co. *v.* Books.]

County, 9 Barr 28. So it has been ruled that in an action by a bank, evidence of the parol declarations of the officers of the bank is not admissible for the defendant, without proof of the particular officer's being authorized by the board of directors to speak for them, even though it should appear that the board kept no regular minutes of their transactions. Stewart *v.* The Huntingdon Bank, 11 S. & R. 267. In like manner, declarations made by a person, who had been president of a bank, respecting payments made on a note, are not evidence against the bank. Sterling *v.* The Marietta and Susquehanna Trading Company, 11 S. & R. 179; Bank of Northern Liberties *v.* Davis, 6 W. & S. 285. The decision in the case of The Harrisburg Bank *v.* Tyler, 3 W. & S. 373, does not conflict with these authorities; for the declaration of the cashier was received in that case that the bank had knowledge of a trust, and it was in the performance of those functions which peculiarly belong to that office in the current transactions of its business. Hazleton Coal Co. *v.* Megargel, 4 Barr 329. This assignment of error is therefore sustained.

The 4th error assigned is that the learned judge erred in admitting evidence of the number of plaintiff's family, his habits, industry and economy, as affecting the question of damages. In Laing *v.* Colder, 8 Barr 479, it was ruled in a case of injury to the person that damages sustained by the plaintiff, from the circumstance of his being the head of a family dependent upon him, have no necessary connection with the injury. Such damages may or may not follow a temporary bodily disability. Damages of this nature are therefore not direct or necessary, but special as being possible only, and must be specially averred to let in evidence of them. It is difficult also to see what bearing the plaintiff's habits, industry and economy could legitimately have on the damages. This might be important in a proceeding under the Act of April 26th 1855, Pamph. L. 309, but in an action by the injured party himself they were irrelevant, and tended only to excite feelings of commiseration and sympathy in the breasts of the jurors, and to inflame unjustly the damages—results which in all actions of this character ought carefully to be avoided.

The 5th error is in excluding testimony offered by the defendants below touching the efforts made by them to secure competent train hands. We think the court was right in excluding this testimony. It was no justification or excuse to the company in employing an intemperate or incompetent man in a business, involving such peril to life and limb, that hands were scarce. For a sufficiently high rate of compensation sober and competent men are always to be had. Such evidence, if admitted, would necessarily lead to collateral issues far wide of that on trial. We think there was no error in this ruling.

The 6th error assigned is in excluding from evidence the

employee's pass, upon which the plaintiff was riding. The ticket produced was in these terms: " Pass. S. Books, route agent, an employee of the Pennsylvania Railroad Company." The evidence offered was of course to show that the plaintiff accepted and used this ticket. It certainly was an admission by him that he bore to the plaintiffs in error the relation of an employee or servant. It was not indeed conclusive, not an estoppel, if explained so as to show that he was really not in the employ of the company, but, as was alleged, received and used the ticket as a route agent in the service of the post office department of the government of the United States under a contract between that department and the company for carrying the mails. Standing alone, uncontradicted and unexplained, the pass would have been sufficient to show that the relation existed between the company and the plaintiff stated on its face, and it was admissible, no matter what evidence to the contrary had been previously given. The plaintiff in error had a right to have the whole evidence go to the jury, as it would then have been a question for them and could not have been shut out from their consideration, as it was by the judge in his answer to their 7th point. This assignment of error is therefore sustained.

The 7th error assigned is that the learned judge erred in his instructions to the jury on the subject of damages, and in his answers on the same subject to the 9th and 10th points presented by the defendants below. After laying down a measure, which is not objected to here, and on which, therefore, we give no opinion, he added: " These, we think, would be fair rules to ascertain the measure of damages the plaintiff would be entitled to in this case; but if you can find any better ones than those suggested, you are at liberty to adopt them, as the measure and amount of damages are entirely for you to ascertain, under all the evidence and circumstances in the case." The effect of this language was to leave the measure of damages entirely in the discretion of the jury. The general rule in actions on the case for negligence is, that the party aggrieved is entitled to recover only to the extent of his actual injury. In the case of a suit by the party injured himself, it may, no doubt, include a reasonable compensation for pain and suffering, as well as the expense of medical attendance and the loss of time consequent upon confinement. But in these cases, as well as in those brought under the Act of April 26th 1855, unless the injury has been wantonly inflicted, when exemplary damages may be given, the jury must be confined to damages strictly compensatory. " Injuries to the person consist in the pain suffered, and in the expenses and loss of property they occasion. In estimating damages, the jury may consider, not only the direct expenses incurred by the plaintiff, but the loss of his time, the bodily suffering endured and any incurable hurt

[Pennsylvania Railroad Co. *v.* Books.]

inflicted:" Per Bell, J., in Laing *v.* Colder, 8 Barr 481.    There was error therefore in the instruction.

The objection to the answer to the 9th point has not been pressed, and very properly; we see no error in it.    The 10th point was, "that if the court should be of opinion that plaintiff may recover, then the measure of damages would be the . pecuniary loss he has sustained in consequence of the injuries received." The answer was: "This is not the entire measure of damages you can give the plaintiff, if you believe this occurred from the gross negligence of the defendants' agents."    The court might with more accuracy and propriety have simply negatived the point; for it was not true whether the negligence of the defendants' agents was gross or otherwise.    There is therefore no error in this answer of which the plaintiffs in error have any right to complain.

As to the 8th assignment of error, we think the learned judge was clearly right in his answers to the 3d, 4th and 5th points presented by the defendants below.    Every one riding in a railroad car is presumed primâ facie to be there lawfully as a passenger, having paid, or being liable when called on, to pay his fare, and the onus is upon the carrier to prove affirmatively that he was a trespasser.    So as to the 9th error assigned, the employee's pass having been excluded, though we think improperly, there was no evidence that the plaintiff was an employee of the company.

Judgment reversed, and a *venire facias de novo* awarded.