# Geiger *v.* Pittsburgh Railways Co., Appellant.

*Negligence—Street railways—Passenger and carrier—Elements constituting relationship—Case for jury—Charge to jury—Inadequate instructions—Waiver.*

1. The undertaking on the part of a person to travel in a carrier's conveyance and the acceptance by the carrier of the person for transportation are the necessary elements constituting the relationship of passenger and carrier and their existence may be implied from evidence that an intending passenger after being prevented by a motorman from boarding a summer car which was at a standstill, went to the side of the car which was closed to passengers by a guard rail, climbed over the guard rail so that his head and body were within the car, and said that he was going to the car barn to report the motorman's conduct, and that thereafter the car was started by the motorman.

2. Where in such case there was further evidence that immediately after starting the car the motorman struck at the passenger, causing him to dodge the blow and strike his head against another car approaching from the opposite direction on another track, resulting in his fall to the street and death, the court did not err in submitting to the jury the right of such passenger's mother to recover from the street railway for his death.

3. The failure of the court to instruct the jury fully on questions of law affecting the case before them is not ground for reversal where no additional instructions have been asked.

Argued Oct. 13, 1914.   Appeal, No. 22, Oct. T., 1914, by defendant, from judgment of C. P. Allegheny Co., Feb. T., 1908, No. 222, on verdict for plaintiff in case of Mary Geiger, survivor of Adam Geiger, deceased and Mary Geiger v. Pittsburgh Railways Company.   Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ.   Affirmed.

Trespass to recover damages for the death of plaintiff's son.   Before DAVIS, J.

The facts appear in the opinion of the Supreme Court and in Geiger v. Pittsburgh Railways Co., 234 Pa. 545.

Verdict for plaintiff for $3,000 and judgment thereon. Defendant appealed.

*Errors assigned* were various assignments referred to in the opinion of the Supreme Court.

*William A. Challener,* with him *Clarence Burleigh,* for appellant.

*Rody P. Marshall,* of *Thomas M. and Rody P. Marshall,* for appellee.

OPINION BY MR. JUSTICE POTTER, January 2, 1915:

This case was here upon a former appeal as reported in 234 Pa. 545. The facts were stated in the opinion which was there filed. Judgment for the plaintiffs was there reversed, upon the ground that the instructions of the trial judge to the jury did not adequately cover the essential questions involved. Counsel for appellant then contended earnestly, as they do here, that the court below should have held as matter of law that Michael Geiger was not a passenger upon the car of the defendant company, at the time of the accident. We said in the former opinion that it was difficult under the evidence in the case, to reconcile the verdict of the jury in favor of the plaintiffs, with any proper understanding by the jury of what was required to constitute a passenger. The case was therefore sent back for another trial, in which more complete directions could be given to the jury. We felt, however, that it could not properly be said that the record was barren of any evidence, which if credited by the jury, would support a finding that Geiger was at the time of the accident upon the car as a passenger. If there was any such evidence, its credibility was necessarily for the jury. The record of the second trial is now before us. There are twelve assignments of error. The first assignment is to the refusal of the trial judge to affirm defendant's point requesting

binding instructions in its favor. The second assignment is to the refusal of the court below to enter judgment for defendant n. o. v. The third, fourth and fifth assignments are to the refusal of points submitted by defendant. The sixth to the eleventh assignments inclusive are to portions of the charge. The twelfth assignment alleges inadequacy in the charge of the court on the question of whether plaintiffs' son became a passenger on defendant's car or not. These assignments have all been carefully considered. Without taking up the specifications separately or in detail, we will discuss the questions properly raised by this appeal.

The record shows that Geiger got upon the car while it was standing still, but did he do so with the intention, as he is alleged to have said, of riding to the car barn to make complaint? Or was it for the purpose of assaulting the motorman? That was one of the chief questions in dispute. It appears, that the witness, Daniel Quinlan, testified that he heard Geiger say to the motorman, "I am going to get on the car, and go up to the car barns and report you." Witness said that Geiger then got on the running-board and the motorman shoved him off. Then Geiger said, "I am going to report you," and he walked around the front of the car and got on the other side. He got on the car over the strap or rope, all over but one leg. That was the left side of the car. He was all on the car except his left leg. There was a closed car coming down, and the motorman seemed to be shoving Geiger and striking at him, with something that looked like a piece of brass. Witness said that he saw the motorman strike at Geiger, and that he fell down between the two cars, the summer car and the closed car, and was hurt. This witness only saw the motorman strike at Geiger, and could not say whether he hit him or not.

Another witness, McGrath, testified in substance, that Geiger said that he was going to report the motorman for not turning his running-board up. They would not

let him on the car. Then he went around to the left side of the car and got his leg over the chain. Witness said he saw the motorman strike at Geiger three times. James Butler, testified that Geiger said to the motorman, "I will report you," and started to jump on the car. The motorman had the controller handle in his hand and was going to hit him. Then Geiger started around to the left hand side of the car and stumbled over the fender, and got upon the left hand side of the car. The car took a jump and he was hit by another car coming down. Edward J. Arthur, testified that the motorman would not put up his running-board, and that Geiger got on the running-board, and said that he was going up to the car barn to report him. The motorman struck at him, and a motorman from another car put his hand on his shoulder, and then Geiger went around the front of the car, fell over the fender, got up and started to crawl over the guardrail. He got in all but one leg, when the motorman started the car. After the car started, the motorman made a strike at Geiger, with something in his hands, and Geiger fell out backwards and got hit with the other car coming from the opposite direction. He fell back when the motorman made a strike at him. Witness could not say whether the motorman hit him or not. The car had started and gone about the width of a building when the motorman struck at Geiger. Another witness, Milan Milanevitch, testified that when Geiger went around to the left hand side of the car, he got on the second seat of the car. He got on with one hand and one foot in the car, and after it had gone five or ten feet he was all in, on the second seat from the motorman. When they had gone about thirty feet, the motorman struck him on the head with the handle from the controller, and he fell down and was struck by the other car coming from the car barn. Without quoting further, it is apparent from the record that there was evidence on the part of plaintiff which showed that Geiger expressed to the motorman his intention of getting on the

car, and riding to the car barn, in order to report him, and that he first attempted to board the car on the right hand side, but was prevented by defendant's employees, from entering the car on that side; that he then went around to the left hand side of the car, and succeeded in getting on with the exception perhaps of one leg, and that while his head and body were within the car, the motorman struck him, or struck at him with his controller handle; the effect of which was according to this testimony, to cause him to throw back his head and body, so as to bring them in the way of the car which was approaching on the other track. Whether or not this evidence was worthy of belief, was for the jury to say. According to plaintiff's witnesses, the motorman started the car after Geiger was on, and it was in motion when as they said, the motorman struck at him. In Penna. R. R. Co. v. Books, 57 Pa. 339, a case which has been repeatedly recognized as authority, Mr. Justice SHARSWOOD said (p. 346) : "Every one riding in a railroad car is presumed prima facia to be there lawfully as a passenger, having paid, or being liable when called on, to pay his fare, and the onus is upon the carrier to prove affirmatively that he was a trespasser." Under the principle thus announced, and that of other authorities to the same effect, which might be cited, we are satisfied that the question of whether or not Geiger was a passenger, was one of fact for the jury, and was not properly to be determined as a question of law, by the court.

In giving to the jury, the law applicable to the facts, the trial judge said, "The placing of a guard rail upon the blind side, or the inside of the car, is a matter for the protection of the passengers, and a notice to the passenger that that is not a place where he can enter the car. Now, did Michael Geiger go around this car for the purpose of becoming a passenger, and did he attempt to enter by the blind side of the car where there was notice given to him, and where there was a bar against his

entry? Was he while entering that car as a passenger, caught or run into by the inbound car; and did that cause his death? To enter upon the car under those circumstances would be what the law terms contributory negligence, that is, it is negligence per se, and if under those circumstances Geiger met his death, by reason of being caught while entering the car, by this inbound car, then the fault was his own, and there can be no recovery in this case." Under this instruction, the verdict shows that the jury must have found that Geiger was not caught while in the act of getting on the car. The jury was further instructed: "As this case appears to the court there can be no recovery, unless you find that Michael Geiger actually became a passenger on this car, by reason of which fact of becoming a passenger the defendant company owed him the duty of protection. If you have this fact in the case, that Mr. Geiger got upon the car on the blind side, had reached a place of safety, had sat down upon a seat, and this motorman had then made an unprovoked, wanton and malicious attack upon him, when he had actually constituted himself a passenger, then the company would be liable, for they owed him a duty of protection." The court further said, that in order to recover at all, it must appear that he was actually a passenger. In addition to this defendant's third point was affirmed, which was as follows: "The evidence in the case relating to the controversy between the street car employees on the one hand, and Geiger on the other, followed by Geiger's assault, or his attempted assault upon the motorman, the preventing of Geiger from entering the car from the right hand side thereof, and Geiger's attempt to board the car from the inner side, over the lowered guard rail, are sufficient, if believed by the jury, to warrant the jury in finding that Geiger never became a passenger, and never in good faith intended to become a passenger on said car." The fifth point was also affirmed, which was as follows: "If the jury find from the evidence that Geiger engaged in a quarrel with one or

more employees of the defendant company, and for the purpose of pursuing the quarrel went around to the inner side of the car and climbed on it, or even into the car, he was a trespasser, and there can be no recovery in damages for his death, even though the jury further find that he was struck by the motorman, and thereby brought into contact with the car coming from the opposite direction." Here again under these instructions the verdict must be accepted, as showing that the jury found that Geiger intended in good faith to become a passenger, and did not get upon the car for the purpose of assaulting the motorman. It may be said that the charge was not as definite, or as full as may have been desired, as to what was necessary to constitute a passenger, but if defendant's counsel were not satisfied, they should have submitted another point expressing accurately and precisely the definition they wished to have given. As it was, the court gave the instructions which they requested. It is true that in order to constitute one a passenger, there must be not only a bona fide intention to become such, but there must be an acceptance of him as such, by the carrier. Thus in 2 Hutchinson on Carriers (3d ed., 1906), Sec. 997, it is said: "There are two main elements in the legal definition of a passenger: first, an undertaking on the part of a person to travel in the conveyance provided by the carrier, and second an acceptance by the carrier of the person as a passenger. Whether either or both of these elements exist is ordinarily a question for the jury. The acceptance by the carrier need not be direct or express, but may be and usually is implied from the surrounding circumstances." A sound statement of the principle involved is found in 1 Nellis on Street Railroads (2d ed., 1911), Sec. 253, where it is said: "One who has boarded a street car or entered a train with the intention of becoming a passenger, even though no fare has been collected of him before he sustains an injury, is a passenger, and is not a trespasser simply because he has entered in

an irregular manner and violated a rule of the company as to the mode of getting on."

In the present case, the trial judge omitted, in the main body of the charge to instruct the jury, that in order to consider Geiger a passenger, they must find not only that he had boarded the car with the intention of becoming a passenger, but also that the carrier had, either expressly or impliedly accepted him as such. But at the close of the main portion of the charge, counsel for appellant noted an exception to the instructions which had then been given, as being inadequate upon this point. The court then supplemented what he had said, by telling the jury that, "In order that the plaintiff may recover at all, it must appear that his death was caused by some negligent act upon the part of the defendant company, or it must appear that Michael Geiger had become an actual passenger; that his presence was known upon the car by the motorman or conductor, and they had accepted him as such." He added further: "If they did not desire that he should be a passenger on that car, after they had knowledge, it was their duty to stop and remove him from the car." No exception was taken to this supplemental instruction as being inadequate although to the last sentence, there was an exception, and it was assigned as error. It was however a correct statement of the law. If the evidence given by some of plaintiffs' witnesses was true, the car was started after the motorman knew that Geiger had gotten upon it. The fact that it was not held, or stopped to enable Geiger to get off, or to be put off, might have been regarded by the jury as an indication that he had been accepted as a passenger, by those in charge of the car.

The case was for the jury, and a careful consideration of the entire charge leads us to the conclusion, that the defendant has no reasonable ground to complain of the manner in which the questions involved were submitted.

The assignments of error are all overruled, and the judgment is affirmed.