# Korpa, Appellant, *v.* Stuyvesant Life Insurance Company, Appellant.

Argued November 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Samuel J. Goldstein,* for appellant at No. 271, and appellee at No. 277.

*Arthur R. Gorr,* with him *Stein & Winters,* for appellant at No. 277, and appellee at No. 271.

OPINION BY WATKINS, P.J., October 28, 1975:

These are appeals from the entry of compulsory nonsuits by the Court of Common Pleas of Allegheny County, Civil Division, against the plaintiff-appellant, Mildred Korpa, in an assumpsit action and against the defendant-appellant, Stuyvesant Life Insurance Company, on its counterclaim; and from the action of the court en banc in refusing to remove the nonsuits.

Korpa was employed in 1966 by Siltronics, Inc. as a machine operator. On November 16, 1966, she injured her neck and shoulder while operating a press. Due to this injury she was unable to work and received disability benefits from Travelers Insurance Company under a group policy provided by her employer. Upon the advice of doctors, plaintiff returned to her place of employment and attempted to work in March, 1967. Although she drew pay, she was unable to perform even the lightest jobs. After several months of attempting to work, during which period she missed considerable work-

ing time because of pain resulting from her injuries, she finally gave up attempting to work completely in December, 1967.

In February, 1967, the Travelers group policy expired and was not renewed by Siltronics. However, Travelers continued to pay disability benefits to plaintiff until March, 1967, when she returned to work. Siltronics contracted with Stuyvesant for the group disability policy. This contract became effective on March 1, 1967.

In January, 1968 plaintiff presented a claim to Stuyvesant for disability benefits resulting from injury. She gave the date of her injury as January 2, 1968. As a result of this claim Stuyvesant paid disability benefits to Korpa until March 25, 1970. On this date, disability payments were terminated because a physician who examined the plaintiff reported that she was not disabled. Plaintiff then brought suit against both Travelers and Stuyvesant. The suit against Travelers was settled prior to trial leaving Stuyvesant as the sole defendant. Stuyvesant claimed that since the injury which resulted in disability occurred on November 16, 1966, prior to the date that its policy came into force, that it was not liable to plaintiff for anything. Stuyvesant also counterclaimed for the sum of $5,226.42 which amount represents the total disability payments paid by it to plaintiff from January, 1968 to March 25, 1970.

Plaintiff alleges that the trial court erred in not permitting the case to go to the jury. She also claims that the trial court's permitting a reference to the settlement with Travelers to be made within the hearing of the jury and permitting a reading into the record of several exchanges of correspondence between the plaintiff's counsel and a doctor constituted reversible error. Since the case never went to the jury due to the court's rulings on the nonsuit we need not discuss the latter allegations.

When deciding the correctness of the granting of a compulsory nonsuit, the evidence and all reasonable in-

ferences which may be deduced therefrom must be considered in the light most favorable to the plaintiff. *Gatens v. Vrabel,* 393 Pa. 155, 142 A.2d 287 (1958). The granting of a motion for a compulsory nonsuit is justified only where the facts and circumstances of the case lead unerringly to but one conclusion. *McNett v. Briggs,* 217 Pa. Superior Ct. 322, 272 A.2d 202 (1970).

Viewing the evidence in the light most favorable to the plaintiff we must conclude that the entry of a compulsory nonsuit by the court below was correct. Plaintiff's expert medical witness, as well as the plaintiff herself, testified that the injury resulting in her disability occurred on November 16, 1966. Since Stuyvesant's policy did not go into effect until March, 1967, it is apparent that plaintiff's injury was not covered by its policy. Plaintiff argues, however, that Stuyvesant should be estopped from denying coverage at this time because it paid disability benefits to the plaintiff from January, 1968 to March, 1970. "An estoppel is a bar which precludes a person from denying the truth of a fact which has become settled in the contemplation of law. . . . by the act of the party himself, for the purpose of preventing inconsistency and fraud resulting in injustice." 14 P.L.E. 170.

Estoppels are used in the law as a means of preventing fraud and never to become the instruments of fraud. *Norman v. World Wide Distributors, Inc.,* 202 Pa. Superior Ct. 53, 195 A.2d 115 (1963). The entire gist of equitable estoppel is a misrepresentation of some kind which is relied upon by another to his detriment. *Murphy v. Burke,* 454 Pa. 391, 311 A.2d 904 (1973). Plaintiff contends that Stuyvesant's payments of disability benefits to her created a reliance on her part on the benefits and therefore Stuyvesant should be precluded from denying benefits to her now. The problem with this reasoning is that the fraud or misrepresentation, if any existed, was committed by the plaintiff and not Stuyvesant. When

plaintiff first applied for disability benefits from Stuyvesant she gave the date of her neck injury as "1/2/68." Nothing else on the application form indicated anything as to any previous such injury. Thus, Stuyvesant had no way of knowing that her injury actually occurred on November 16, 1966 and not on January 2, 1968, the time at which its policy was in effect. Under these circumstances we cannot hold that Stuyvesant should be estopped from denying liability at this point because it made the payments to plaintiff on the basis of erroneous information provided by her in her application for benefits. Thus, we hold that the court below was correct in entering a compulsory nonsuit against the plaintiff in her cause of action against Stuyvesant.

The court below, however, incorrectly granted a compulsory nonsuit to the plaintiff in Stuyvesant's action against her for the sums erroneously paid to her by Stuyvesant. If Mrs. Korpa was totally disabled on November 16, 1966, as she claims, then Stuyvesant was never liable to her for any amount as she was totally disabled at the time its policy went into effect. It should be pointed out that the plaintiff could have collected from Travelers as her claim had vested before the Travelers group policy had expired and the new policy with the defendant came into being. In fact she made a settlement of her claim for the same period with Travelers. Thus, any amount paid to her was done so in error which error was caused by the incorrect information on the application form. While we understand that Mrs. Korpa is a woman of limited education and undoubtedly had no intention of defrauding the company, by giving January 2, 1968 as the date of her injury, the fact remains that Stuyvesant has paid a claim for which it was not liable due to erroneous information being supplied to it. Since Stuyvesant relied on erroneous information provided it by the plaintiff and paid a claim for which it had no liability, relying in good faith on an application which

was valid on its face, we find that a compulsory nonsuit was wrongfully entered against Stuyvesant on its claim against the plaintiff.

Order granting compulsory nonsuit to the defendant at No. 271 April Term, 1974, is affirmed. The order granting a compulsory nonsuit to the plaintiff at No. 277 April Term, 1974, is vacated and the case is remanded for further proceedings consistent with this opinion.

CONCURRING OPINION BY SPAETH, J.:

I agree with the majority that the compulsory nonsuit was correctly granted against appellant Mildred Korpa in her cause of action against appellee Stuyvesant Insurance Company. I also agree that the compulsory nonsuit was incorrectly granted against counterclaim appellant Stuyvesant, and that the case should be remanded for further proceedings. Upon remand, however, I would instruct the court below to permit counterclaim appellee Korpa to amend her reply to Stuyvesant's counterclaim.

Paragraphs 24 and 25 of Stuyvesant's counterclaim read as follows:

"24. On or about February 28, 1968, the plaintiff filed with defendant an application for benefits, a true and correct copy of which is attached hereto and marked 'Exhibit C.' In said application plaintiff indicated she had 'taken sick or injured' on January 2, 1968. The application further indicated that although plaintiff suspected a neck injury, she was suffering from a thyroid condition.

"25. Thereafter on the basis of said application defendant paid plaintiff disability benefits on a *sickness* basis. Defendant paid a total of $5,226.42 to plaintiff. Said payments are admitted by the plaintiff in paragraphs Twelfth and Thirteenth of plaintiff's Amended Complaint."

Korpa replied to paragraph 25 of the counterclaim as follows:

"25. The averments contained in Paragraph 25 are denied, and your plaintiff avers that disability benefits were paid to her resulting from the original injury of which the defendant, Stuyvesant Life Insurance Company, had notice."

This reply is inaccurate. Korpa did have thyroid surgery in February of 1968. The physician's statement on Korpa's original application for benefits from Stuyvesant reads as follows:

"Patient was first treated for suspected neck injury— on confinement to hospital, thyroid condition was found and operation was performed."

This surgery occurred after the effective date of the Stuyvesant policy, and according to the testimony of Stuyvesant's own claims examiner, the claim for that surgery was legitimate under the Stuyvesant policy.

If the reply were left in its present form, and Stuyvesant should win on its counterclaim, Korpa would be precluded from retaining the portion of the $5,226.42 that Stuyvesant properly paid her for the thyroid operation. I would therefore permit Korpa to amend the reply to differentiate between the payments made for the surgery and those made for the 1966 injury.

I grant that such an amendment would create an inconsistency between the original reply and the amended reply. Although there is a general principle that requires consistency between the amended defense and the original, that principle is subject to the exception that it does not apply when there is a satisfactory explanation of the contradictions or inconsistencies in the averments of the defensive pleadings. *Avondale Cut Rate, Inc. v. Associated Excess Underwriters*, 406 Pa. 493, 178 A.2d 758 (1962); *Stewart v. Hooks*, 372 Pa. 542, 94 A.2d 756 (1953); *Levin v. Kapnek*, 166 Pa. Superior Ct. 39, 70 A.2d 392 (1950). In *Stewart v. Hooks, supra,* for ex-

ample, a contractual oral agreement was admitted in the defendant's first answer, and was denied in the second. The amendment was nevertheless permitted because the defendant was ignorant of the true facts while the plaintiff should have had knowledge of them, and because of the oversight of counsel.

In the case at hand, a sufficient explanation for the contradictions in the two pleadings is also present. Korpa was led by the conduct of the insurance company to believe that at least the greater portion of the benefits she received were based on her 1966 injury. Every claim form she submitted, except the first application related to the thyroid surgery, was based on the disability allegedly resulting from that injury. According to the testimony of Stuyvesant's claims examiner, however, it was not the practice of the insurance company to review claim forms after the first one. Because of this careless handling of claims, Stuyvesant continued to pay Korpa, and she naturally assumed they were paying her for the injury she was claiming in those forms.

Furthermore, Korpa's attorney was careless in his preparation of the reply. Korpa herself was not schooled in the law, and obviously relied on her attorney in the preparation of such a complicated law suit. His study of the insurance policies and the claims forms and his questioning of his client should have revealed to him that the thyroid surgery was distinct from the 1966 injury claims. Korpa should not be penalized for the inefficiency of her attorney. "[T]he rights of litigants should not be made to depend on the skill of the pleaders but rather on the justice of their claims." *Avondale Cut Rate, Inc. v. Associated Excess Underwriters, supra* at 500, 178 A.2d at 762.

In summary, therefore, while I concur in the majority's disposition of the case, I would include the additional instruction to the court below to permit the amendment of Korpa's reply to the counterclaim.