401 A.2d 366

Katherine KIELY

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION
AUTHORITY, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 14, 1978.

Decided Jan. 26, 1979.

Rehearing Denied May 29, 1979.

Joseph F. Keener, Jr., Philadelphia, for appellant.

Robert T. Lynch, Philadelphia, for appellee.

Before VAN der VOORT, WATKINS and MONTGOM-ERY, JJ.

MONTGOMERY, Judge:

In this action of trespass for personal injuries sustained by plaintiff-appellee, Katherine Kiely, as she was entering appellant's (SEPTA) 69th street terminal building in the city of Philadelphia, a jury returned a verdict in her favor. A Board of Arbitrators had previously rendered an award in favor of SEPTA from which she had appealed to the Common Pleas Court. Posttrial motions having been denied and judgment entered on the verdict, this appeal followed.

Aside from certain alleged trial errors, the basic issue before this court is, what duty SEPTA owed plaintiff and whether it violated that duty. Appellant contends it owed plaintiff only the duty to exercise reasonable care for her safety and not the highest degree of care it owes to its passengers; and that there was no violation of any duty to her, which entitled SEPTA to judgment N. O. V., or in the alternative a new trial for the alleged trial errors.

In an appeal from the denial of a motion for a judgment n. o. v., the evidence must be viewed in the light most favorable to the verdict winner; evidence supporting the verdict is considered and the rest is rejected; and all conflicts in testimony are resolved in favor of the verdict winner. *Grubb v. Albert Einstein Medical Center,* 255 Pa. Super. 381, 387 A.2d 480 (1978).

Viewing the evidence in accordance with the foregoing rules, the acceptable factual situation as to how the accident occurred would be as follows: On Saturday morning, September 15, 1973, Mrs. Kiely, aged 69, intending to become a passenger on a SEPTA trolley, entered SEPTA's 69th street terminal building through a double door which opened inward or in the direction she was walking. The doors were controlled by a piston type device containing oil which determined the force with which the doors closed on their return to their closed position after having been opened. As Mrs. Kiely approached the doors, other people were going through the same doors, one of whom released the door from a fully opened position. Before Mrs. Kiely could raise her hand to check its closing, the left door struck her on the left knee fracturing her knee cap and knocking her to the concrete floor which she struck with the back of her head causing a concussion as well as an abrasion and some swelling. Mrs. Kiely, the only witness who testified to the accident, stated that as she approached the doors "they were part open. Whoever was going ahead of me, the lady that was going ahead of me, she opened it full force and let it slam back, the door hit me—and I was knocked out completely." Mrs. Kiely was ready to go through the door to

enter the terminal when someone who was in front of her—"—held it back so far,—and then left it go." She was carrying her handbag and stole on her left arm as she reached for the door with her right hand as it was half-way open, but she could not say whether she touched the door with her right hand.

There is a difference in the views of the parties on the question of the measure of care SEPTA owed to Mrs. Kiely under the circumstances. Appellant argues that the standard of care is to be found in the Restatement of the Law of Torts, Section 343:

A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon it, but only if he (a) knows, or by reasonable exercise of reasonable care could discover, the condition which is known to him, he should realize as involving an unreasonable risk to them.

Citing *Lanni v. P. R. R. Co.*, 371 Pa. 106, 88 A.2d 887 (1952).

The appellee disagrees with this view of the law and argues that as soon as she entered the SEPTA terminal with the intention of boarding a SEPTA trolley, the relationship of passenger and common carrier began and continued until she reached her destination, the Villanova Station, and that this compelled appellant to exercise the highest degree of care in safeguarding her, although not an insurer of her safety. In support of her position, she cites *Hamley v. George*, 365 Pa. 543, 76 A.2d 181 (1950), and *Powell v. Philadelphia and Reading Railway Co.*, 220 Pa. 638, 70 A. 268 (1908).

This case was tried on the view advanced by appellee. The jury was charged that SEPTA owed Mrs. Kiely, as a passenger, the highest degree of care, and the opinion[1] filed in disposing of the posttrial motions confirmed this view.

Certain facts of general knowledge must be considered in resolving this issue. Terminals, whether serving SEPTA,

1. Judge Gleeson, the trial judge, was ill when this opinion was written by Judge Carson.

airlines, railroads, or buses, are to some extent devoted to commercial ventures in addition to uses exclusively related to the carriers. Also, there are facilities utilized by passengers before boarding or after disembarking which are also used by visitors, some of whom are seeing off friends or receiving those on arrival, or are merely sightseers. Furthermore, generally there are areas set apart for the actual boarding and disembarking of passengers. In the case of SEPTA at 69th street, boarding passengers must first go through turnstiles, at which point they must deposit their token fares which may be bought at booths in the terminal outside the turnstiles. Although in many cases a terminal serves more than one carrier, in the present case it served only one, SEPTA being both carrier as well as owner of the terminal.

Returning to appellee's argument, we fail to find in either *Powell* or *Hamley* any support thereof. *Hamley* distinguished between a pedestrian using a permissive crossing of a railway from "an intending passenger". *Hamley* distinguished between a mere licensee and one who had been a passenger on the defendant's railroad. A new trial was granted in *Powell* because the trial judge instructed the jury that the relationship of carrier and passenger had not ceased at the time of the accident. The Supreme Court held this was a question for the jury, recognizing, however, that such relationship (P. 643) "—begins as soon as one intending to become a passenger enters in a lawful manner upon the carrier's premises to engage passage, and that the relation continues to exist until the passenger has been made aware of his arrival at the place of destination and has had a reasonable time to alight from the car and to leave the premises of the carrier."

As in *Powell,* the trial in the case before us was conducted and the jury instructed on the premise that Mrs. Kiely was in fact a passenger. This was error mandating a new trial.

Further enlightenment on this subject may be found in *Geiger v. Pittsburgh R. W. Co.,* 247 Pa. 287, 93 A. 342 (1915),

wherein the question was whether the plaintiff boarded the street car for the purpose of riding to the car barn or for the purpose of assaulting the motorman. This was held to be a question of fact for the jury and not a question of law for the court. In so holding, the Supreme Court cited the following passage from 2 Hutchinson on Carriers (3d ed. 1906), Sec. 997, "There are two main elements in the legal definition of a passenger: first, an undertaking on the part of a person to travel in the conveyance provided by the carrier, and second an acceptance by the carrier of the person as a passenger. Whether either or both of these elements exist is ordinarily a question for the jury. The acceptance by the carrier need not be direct or express, but may be and usually is implied from the surrounding circumstances."

*Lanni,* cited by appellant, did not consider the issue confronting us. Although the plaintiff had been a passenger, she had left the station and was on a driveway outside of it, still on property of the railroad when she fell on an accumulation of grease. The case was tried on the theory that the railroad was responsible only for reasonable care due a licensee and not the highest degree that must be exercised toward a passenger. We cannot accept it, therefore, as an authority for the disposition we must make of the present case.

■ Although the evidence of the establishment of the carrier passenger relationship is meagre in this case, there is at least a scintilla which prevents us from granting judgment in appellant's favor. It is an issue for a jury.

Since this case must be retried to determine plaintiff's status, and then on the proper principle of law applicable to that finding, we decline to pass on the sufficiency of evidence or the alleged errors of the trial judge as might be apparent in the present record.

Judgment reversed and a new trial awarded.