430 A.2d 665

Dolores E. PEAIR and Wallace L. Peair

v.

HOME ASSOCIATION OF ENOLA LEGION NO.
751, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 8, 1980.

Filed May 22, 1981.

Petition for Allowance of Appeal Denied Aug. 24, 1981.

F. Lee Shipman, Harrisburg, for appellant.

Kent H. Patterson, Harrisburg, for appellees.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This is an appeal from a judgment entered on a verdict in a negligence case. The verdict was in favor of appellees, who were plaintiffs below, in the amount of $25,000. The case was tried under the Comparative Negligence Act.[1] In response to special interrogatories, the jury found appellant to have been 85 per cent negligent and appellees 15 per cent. The trial judge accordingly molded the verdict to $21,250. Appellant argues that the lower court erred in refusing to grant either its motion for judgment n. o. v. or its motion for new trial. Among the issues presented are issues of first impression under the Comparative Negligence Act. We agree with the lower court's resolution of these issues, and finding no error, shall affirm.

—The Motion for Judgment N.O.V.—

Appellant first argues that the lower court should have granted its motion for compulsory nonsuit and therefore its motion for judgment n. o. v. because, it says, the evidence was insufficient to permit the jury to find that it had been negligent.

A nonsuit should be entered only in a clear case. *McMillan v. Mountain Laurel Racing Inc.*, 240 Pa.Super. 248, 367 A.2d 1106 (1976); *DiGiannantonio v. Pittsburgh R. Co.*, 402 Pa. 27, 166 A.2d 28 (1960); *Dunmore v. McMillan*, 396 Pa. 472, 152 A.2d 708 (1959). In describing how clear the case must be, it has been said that a nonsuit can be entered

only when it is inconceivable, on any reasonable hypothesis, that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to the plaintiff, could determine in his favor the controlling issues involved.

1. Act of July 9, 1976, as amended, 42 Pa.C.S. § 7102, applicable to causes of action arising on or after September 7, 1976. *Costa v. Lair*, 241 Pa.Super. 517, 363 A.2d 1313 (1976).

*Borisoff v. Penn Fruit Company, Inc.*, 165 Pa.Super. 572, 574, 69 A.2d 167 (1949).

Also, it has been said that a nonsuit should be entered only where the facts and circumstances lead unerringly to the conclusion that the plaintiff has failed to prove his case. *Korpa v. Stuyvestant Life Ins. Co.*, 236 Pa.Super. 581, 351 A.2d 682 (1975). When these principles are applied here the evidence produced by appellees may be summarized as follows:

The claim is for damages arising from injuries suffered by appellee Dolores E. Peair when she fell twice—the first time on September 9, the second on September 14, 1976—on the sidewalk in front of appellant's building on Shady Lane in Enola.

The first fall occurred when Mrs. Peair was on her way home from a bus stop. It was a clear dry day. As Mrs. Peair walked on the sidewalk in front of appellant's building, she looked down and saw "what appeared to be solid concrete—and then solid stone, smooth stone," and "gravel in certain parts by the cracks, the grooves in between the blocks." (N.T. 12–13) This condition extended the length of appellant's building, except for a space of about two blocks. Mrs. Peair walked on what she thought was a solid part of the sidewalk. As she passed a hedge growing out over the sidewalk, and put her weight on her left foot, she fell, grabbing the hedge to break her fall. The concrete, which had appeared solid, had crumbled beneath her left foot. Although she had seen ruts in the concrete, there did not seem to be any where she had placed her left foot.

The second fall also occurred when Mrs. Peair was on her way home, from the same bus stop. Again, it was a clear, dry day. Remembering her earlier fall, Mrs. Peair was careful to look down at the sidewalk, and to walk to the left of where she had fallen before. Again, however, when she put her left foot down on concrete she believed solid, it crumbled and she fell.

Mrs. Peair had lived on Shady Lane for nine years, and during the year before she fell she had walked on the

sidewalk in front of appellant's building at least three or four times. She explained that she had not walked on the opposite side of Shady Lane because on that side, at least at the corner, there were weeds and other vegetation growing out over the sidewalk, and beer bottles and cans strewn about. This description was documented by photographs. Also, two neighbors testified that the sidewalk in front of appellant's building was broken and uneven, and had been in a deteriorating condition for at least two years before Mrs. Peair fell.

 As a property owner, appellant had the duty to keep its sidewalk in a safe condition for travel by the public.

Sidewalks must be maintained that they will not present an unreasonable risk of harm to pedestrians. What constitutes such a condition depends upon all of the circumstances. It may generally be defined as one attended with an unreasonable risk of harm, one that is hazardous or unsafe, or one that constitutes a danger to persons traveling thereon.

*Bromberg v. Gekoski*, 410 Pa. 320, 189 A.2d 176 (1963). *See also Rinaldi v. Levine*, 406 Pa. 74, 176 A.2d 623 (1962); *Davis v. Shenandoah Borough*, 273 Pa. 501, 117 A. 207 (1922). It was appellees' burden to prove that appellant had failed to keep its sidewalk in a reasonable state of repair. What constitutes a reasonable state of repair is a question for the jury. *See Kuntz v. Pittsburgh*, 123 Pa.Super. 394, 187 A. 287 (1936). Here, Mrs. Peair's description of the sidewalk, corroborated by the photographs and the descriptions of the neighbors, was sufficient to go to the jury on the issue of whether the sidewalk was in a reasonable state of repair.

 It was appellees' burden also to prove that appellant had actual or constructive notice of the state of repair of its sidewalk. *Murray v. Siegal*, 413 Pa. 23, 195 A.2d 790 (1963). Constructive notice may be proved by evidence of condition itself if that condition is shown to have been evident and in existence for a substantial period of time. *Nash v. Atlantic White Tower System, Inc.*, 404 Pa. 83, 170 A.2d 341 (1961); *Davis v. Shenandoah, supra.* Here, the

testimony, especially of the neighbors, was sufficient evidence to go to the jury on the issue of notice as well.

█ Section 342 of the Restatement (Second) of Torts (1965) states:

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if, (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (c) the licensees do not know or have reason to know of the condition and the risk involved.

The discussion just concluded shows that of these several conditions, appellees' evidence satisfied clause (a), regarding notice of unreasonable risk, and clause (b), regarding failure to exercise reasonable care. Appellant argues, however, with reference to clauses (a) and (c), that Mrs. Peair should have discovered or realized the condition of the sidewalk and the risk involved in walking on it. Again, these issues were for the jury. Mrs. Peair testified that the appearance of the sidewalk was deceptive; concrete that looked solid crumbled when stepped on. The neighbors corroborated this testimony. While it is true that after her first fall, Mrs. Peair must have realized that the condition of that part of the sidewalk on which she had fallen presented a risk, she testified that when she was next on the sidewalk, she deliberately avoided that part and walked on another part that appeared solid, only to have it too crumble.

█ Appellant next argues that even if appellees' evidence was sufficient to go to the jury on the issue of negligence—as we have just held it was—still the lower court should have granted the motion for compulsory nonsuit because the evidence showed that Mrs. Peair's negligence was greater than appellant's. This argument involves the Pennsylvania Comparative Negligence Act, which provides that a plaintiff whose negligence is greater than the

negligence of the defendant may not recover damages. Specifically, the Act provides:

> (a) General Rule—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa.C.S.A. § 7102.

When appellant's counsel moved for nonsuit, the lower court responded:

> I agree at this point that the argument would be very strong but for the Comparative Negligence Doctrine. I think that is a correct statement of law and I would propose to charge the jury, but I don't feel free that since we have comparative negligence I would be free at this time in granting this motion.

(R.R. 114a)

The lower court's response reflects a reluctance that has been expressed by other courts required to apply principles of comparative negligence. A Florida court, for example, has said:

> Because of the very nature of the comparative negligence doctrine, situations in which directed verdicts will be appropriate will occur with even less frequency, particularly in cases where the Plaintiff's own negligence is in issue. We do not here express an opinion as to whether a directed verdict should *ever* be granted where the negligence of both parties is at issue. We do, however, believe that such cases will be extremely rare.

> *Petroleum Carrier Corp. v. Gates*, 330 So.2d 751, 752 (Fla.D.C.App.1976).

In *Cirillo v. Milwaukee*, 34 Wis.2d 705, 150 N.W.2d 460 (1967), the Supreme Court of Wisconsin reversed an order

granting summary judgment, stating that "[s]ummary judgment is a poor device for deciding questions of comparative negligence." The court said that the totality of causal negligence is a matter properly determined by the jury, and that only in rare cases should a court hold as a matter of law that the negligence of one party is equal to or greater than that of the other. *Id.* at 715–16, 150 N.W.2d at 465. For other cases in which this same reluctance is expressed, *see Taylor v. Bolton*, 121 Ga.App. 141, 173 S.E.2d 96, 98 (1970); *Riley v. Lake*, 295 Minn. 43, 203 N.W.2d 331 (1972); *Bourassa v. Gateway Erectors, Inc.*, 54 Wis.2d 176, 194 N.W.2d 602, 604 (1972).

This is not to say that a court will never enter a nonsuit in a comparative negligence case. As a Colorado court has held, the issue of apportionment of negligence should not be submitted to the jury if the plaintiff fails to make out a case of negligence on the defendant's part in the first place. *Powell v. Ouray*, 32 Colo.App. 44, 507 P.2d 1101, 1105 (1973). Also, as indicated in the cases we have cited, a case may arise in which it may be proper to hold as a matter of law that the plaintiff's negligence was equal to or greater than the defendant's, although it does seem likely that such a case will be rare.

We have no difficulty in concluding that the present case is not such a rare case. In arguing to the contrary, appellant has cited two cases. In *Kreskovich v. Fitzsimmons*, 439 Pa. 10, 264 A.2d 585 (1970), the plaintiff fell on a sidewalk because of a hole of which she was aware but forgot to avoid after being distracted by an approaching man. The Court held that the distraction did not excuse the plaintiff for stepping into the hole, and therefore barred her right to recovery. In *Knapp v. Bradford*, 432 Pa. 172, 247 A.2d 575 (1968), the plaintiff tripped on a protruding curb of which she was aware but forgot about when distracted by the sound of an automobile. Again, the Court held her conduct contributorily negligent, and barred her right to recovery. These cases are clearly distinguishable. Here Mrs. Peair testified that the dangerousness of appellant's sidewalk was

not obvious or known to her, even the second time, when she looked carefully at the pavement and believed there were safe, solid blocks for her to walk on. This case is quite similar to *Davis v. Shenandoah Borough, supra,* where the sidewalk was in deteriorating condition but the plaintiff was unaware that the bricks on which she walked would give way under her feet. There, in refusing to hold the plaintiff contributorily negligent as a matter of law, the Court said:

Of course, as it was daylight, she could see many of the defects, but she did not know the bricks would give way under her feet, and a person is not guilty of contributory negligence when injured by a defect of which he is ignorant: *Steck v. City of Allegheny,* [213 Pa. 573, 62 A. 1115]; *Mekelvy v. Juanita Borough,* 265 Pa. 56 [108 A. 205]. While a pedestrian is required to see where he is walking [citations omitted], he is bound to use only ordinary care. 273 Pa. at 504, 117 A. at 208.

*See also Tauber v. Wilkinsburg,* 309 Pa. 331, 163 A. 675 (1932); *Nicholson v. Philadelphia,* 194 Pa. 460, 45 A. 375 (1900).

Finally, appellant argues that its motion for judgment n. o. v. should have been granted because, it says, the verdict was "against the evidence" and "against the law." Brief for Appellant at 3, 18–19. These arguments are little more than conclusory assertions. A judgment n. o. v. should not be entered unless the facts are such that no two reasonable persons could fail to agree. *Kiely v. Septa,* 264 Pa.Super. 578, 401 A.2d 366 (1979); *Frank v. Peckich,* 257 Pa.Super. 561, 391 A.2d 624 (1978). Appellant cites *Stapleman v. St. Joseph the Worker,* 295 Minn. 406, 205 N.W.2d 677 (1973), as an example of a case in which judgment n. o. v. was entered even though the jury had arrived at a verdict for the plaintiff. There, the plaintiff tripped over a coatrack that the defendant had placed near a door. The plaintiff admitted being aware of the coatrack and said she tripped over it after being startled by a voice calling out to her. The court found the plaintiff's negligence "at least equal to, if not greater than, that of the defendant." *Id.* at 205

N.W.2d 678. Given the evidence here, however, it may not be said as a matter of law that Mrs. Peair's negligence in walking on appellant's sidewalk either the first or second time was equal to or greater than appellant's negligence in failing to maintain the sidewalk in a reasonable state of repair.

—The Motion for New Trial—

Appellant first argues that the lower court erred in refusing to grant a new trial because the verdict was against the evidence. A court may grant a new trial on the ground that the verdict is against the evidence only when the verdict shocks one's sense of justice and when a new trial is required to correct the situation. *Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 289, 265 A.2d 516, 518 (1975). The court is not to consider the evidence in the light most favorable to the verdict winner; rather, the court must view all of the evidence. *Abbott v. Steel City Piping Co.*, 437 Pa. 412, 263 A.2d 881 (1970); *Ditz v. Marshall*, 259 Pa.Super. 31, 393 A.2d 701 (1978). A new trial should not be granted "where the evidence is conflicting and the jury might have found for either party." *Carroll v. Pittsburgh*, 368 Pa. 436, 445–46, 84 A.2d 505 (1951). Here, the verdict does not shock one's sense of justice. The evidence as to whether the sidewalk was so visibly defective that Mrs. Peair did know or should have known that it was dangerous was not clear cut. The jury might have found greater negligence in either party's conduct.

Appellant next argues that the lower court erred in refusing to grant a new trial because the verdict was against the law. In general, this argument is the same as appellant's argument for judgment n. o. v. Appellant has made an additional argument, which is that the jury should have been instructed to disregard Mrs. Peair's second fall in their calculation of damages. However, as we have already discussed, we do not agree with appellant that the evidence established as a matter of law that Mrs. Peair's negligence in walking on the same sidewalk where she had fallen five days earlier was greater than appellant's negligence.

Finally, appellant argues that the trial judge committed reversible error in advising the jury, both in the charge and on the verdict slip, that if it found Mrs. Peair's degree of negligence greater than appellant's, it was not to consider damages. The trial judge instructed the jury as follows:

If you find that the plaintiff's causal negligence was greater than the causal negligence of the defendant, then the plaintiff is barred from recovery, and you need not consider what damage should be awarded. If you find that the plaintiff's causal negligence was equal to or less than the causal negligence of the defendant, then you must set forth the percentages of causal negligence attributable to the plaintiff and the percentage of causal negligence attributable to the defendant.

(N.T. 184)

The same instruction appeared on the verdict slip provided the jury for recording its answers to special interrogatories as to the parties' respective degrees of negligence.

Whether in a comparative negligence case the jury should be informed of the consequence of its apportionment of the parties' negligence is a point of considerable controversy. In Hawaii,[2] Massachusetts,[3] Utah,[4] Wisconsin,[5] and Wyoming[6] the jury is not informed of the consequence of its apportionment; rather, the trial judge determines whether damages are to be awarded based on the apportionment. The reason for this rule is to ensure that the jury will not mold its apportionment so as to allow or deny recovery. By not informing the jury of the consequence of its apportionment, it is said, the jury determination will be logical and not the product of sympathy or a conscious desire to aid one side or the other. *See* V. Schwartz, Comparative Negligence (1974);

2. Hawaii Rev.Stat.1968 §§ 663–31(b).

3. Mass.Gen.Laws Ann., ch. 231 § 85.

4. *McGinn v. Utah Power & Light Co.*, 529 P.2d 423 (Utah, 1974).

5. *Fehrman v. Smirl*, 20 Wis.2d 1, 121 N.W.2d 255, reh.den. 20 Wis.2d 28A, 122 N.W.2d 439 (19---).

6. *Johnson v. Safeway Stores, Inc.*, 568 P.2d 908 (Wyo.19---).

H. Woods, Comparative Fault, § 18:2, p. 365 (1978). However, in Arkansas,[7] Colorado,[8] Idaho,[9] Kansas,[10] Louisiana,[11] Maine,[12] Minnesota,[13] New Jersey,[14] and Oklahoma,[15] the jury is informed of the consequence of its apportionment of the parties' negligence. In these jurisdictions it is said that the jury ought to know what will be the ultimate impact on the parties of its apportionment decision.

The commentators are also in conflict. In favor of not informing the jury, it has been said:

> The special verdict is the very cornerstone of the comparative negligence concept and the jury does not, and should not, know the legal effect and result of its answers to the interrogatories in the special verdict.
>
> By using the procedure of a special verdict under comparative negligence, a jury finds the facts without regard to the ultimate outcome of the case. The court takes the facts as found by the jury and awards judgment. The procedure is intended to ascertain the truth untainted by prejudice or desire to see one of the parties win or lose. C. Heft & C. Heft, Comparative Negligence Manual, § 810 (1971).

Against this, it has been said that "... the jury should be informed of the legal effect of the apportionment of fault. Although this would call for a longer instruction and it

**7.** *Cobb v. Atkins,* 239 Ark. 151, 388 S.W.2d 8 (1965).

**8.** *Appelgren v. Argi-Chem., Inc.,* 39 Colo.App. 158, 562 P.2d 766 (1977).

**9.** Idaho Code Ann. § 6–801.

**10.** *Thomas v. Board Township Trustees,* 224 Kan. 539, 582 P.2d 271 (1978).

**11.** *Porche v. Gulf Miss. Marine Corp.,* 390 F.Supp. 624 (E.D.La.1975) (admiralty).

**12.** *Wing v. Morse,* Maine, 300 A.2d 491 (1973).

**13.** Minn.Stat.Ann. § 604.01(1).

**14.** *Roman v. Mitchell,* 82 N.J. 336, 413 A.2d 322, 341 (1980).

**15.** *Smith v. Gizzi,* Okl., 564 P.2d 1009 (1977).

might compromise the control virtue of special verdicts, the jury, at least in 50% systems, [jurisdictions in which a plaintiff will not recover damages if his degree of negligence is 50% or more] should be made aware of the consequences of its own judgment." V. Schwartz, Comparative Negligence § 17.5, pp. 292–93. Other commentators have not limited their approval of informing the jury to 50% systems, but have extended it to all forms of comparative negligence, arguing that "blindfolding" the jury will result in jurors being confused and in the elimination of the jury's power to act equitably in reaching a verdict. *See, e. g.,* Thode, Comparative negligence, contribution among tortfeasors, and the effect of a release—A Triple Play by the Utah Legislature, 1973 Utah L.Rev. 406; Guinn, The Jury System and Special Verdicts, 2 St. Mary's L.J. 175 (1970); Comment, 1975 Utah L.Rev. 569.

We have concluded that the jury should be informed of the consequence of its apportionment of negligence. We regard such information as essential if the jury is to be able to apply the equitable considerations and arrive at the compromises that are an inherent part of the jury system. Prior to the enactment of the Comparative Negligence Act, the jury was instructed that if it found contributory negligence on the part of the plaintiff, it should not award damages but should find for the defendant. *Brown v. Jones,* 404 Pa. 513, 172 A.2d 831 (1961); *Nelson v. Barclay Motors, Inc.,* 414 Pa. 633, 202 A.2d 48 (1964); *Calhoun v. Jersey Shore Hospital,* 250 Pa.Super. 567, 378 A.2d 1294 (1977). One may be sure that juries often disobeyed this instruction and engaged in an apportionment of the parties' negligence, making an award when in the jury's opinion justice required it, although in an amount somewhat diminished by the realization that at least to some extent the plaintiff had been negligent. Thus the jury deliberated knowing the consequence of its apportionment decision. The Comparative Negligence Act has simply brought this process out into the open. We see no reason why we should go farther, and require that now the jury must deliberate

without knowing the consequence of its apportionment decision. We note that our conclusion is the same as was reached by those who prepared Standard Jury Instruction Sec. 3.03, which informs the jury of the consequence of its apportionment decision, and which the trial judge in the present case read to the jury. We approve that instruction.

Affirmed.

HESTER, J., files a concurring and dissenting statement.

HESTER, Judge, concurring and dissenting:

I concur with that portion of the Opinion which holds that the jury should be informed of the consequence of its apportionment of negligence.

I dissent as to the portion of the Opinion which refuses to grant a new trial. I would grant a new trial as to the issues involved in the first day-light fall down. I would refuse to submit to a jury the issues involved in the second day light fall down which occurred on the same sidewalk five days following the first fall down. Appellee clearly assumed the risk.