## Haines v. Neshaminy Mechanical Inc.

*Ira G. Barrows,* for plaintiff.
*Robert M. Hammond,* for defendants.

KELTON, *J.,* February 26, 1991—We have been asked to determine whether a jury verdict in favor of defendant shocks the conscience of this court. We find the verdict shocking and will grant plaintiff's motion for a new trial.

This matter arose from a motor vehicle accident which occurred on the afternoon of March 12, 1987. Plaintiff, Kuma Haines, was operating an automobile in her proper lane of travel on a two-lane, snow-covered highway. Defendant, James Zaino, driving a pick-up truck in the oncoming lane, lost control of his vehicle and crossed the center line into plaintiff's lane, striking her car and pushing it off the highway. As a result of the accident, plaintiff's head hit the metal of the car and part of the dashboard came down on her knee. She was taken to Delaware Valley Medical Center where the emergency room report listed her injuries as a sprained left shoulder and contusion of the left knee and thigh.

Plaintiff subsequently complained of neck, shoulder and back pain which prevented her from doing her normal household chores, sleeping through the night or attending any of her children's school activities. She was unable to return to her position as a library aide for three months.

Plaintiff was diagnosed by her family physician as having suffered a cerebral concussion, cervical dorsal strain and lumbosacral strain and sprain. He prescribed physical therapy, and plaintiff received

35 treatments over a five-month period following the accident. In addition, plaintiff wore a neck brace as well as a back brace for support once she returned to work. Plaintiff consequently brought this action for her alleged personal injuries resulting from the collision. After a two-day jury trial, a verdict was rendered for defendant. The matter is now before us on plaintiff's post-trial motion for a new trial, or in the alternative, judgment n.o.v.

Plaintiff avers that the jury's verdict was against the weight of the evidence and the law. Review of such a question necessitates consideration of all the evidence as presented. *Weaver v. Firestone Tire and Rubber,* 267 Pa. Super. 548, 407 A.2d 45 (1979). A new trial should be granted if it is found to be so contrary to the evidence as to shock the conscience of the court. *Giovanetti v. Johns-Manville Corporation,* 372 Pa. Super. 431, 539 A.2d 871 (1988); *Peair v. Home Association of Enola Legion No. 751,* 287 Pa. Super. 400, 430 A.2d 665 (1981). Clearly, the verdict rendered in the instant case against plaintiff does shock the conscience of this court.

The jury was presented with unequivocal evidence of defendant's negligence. Plaintiff and defendant both testified that defendant's vehicle was out of control, that defendant crossed over the yellow lines in the road into plaintiff's lane, and that the impact took place in plaintiff's lane of traffic.

Defendant testified that the weather conditions were snowy and cold at that time of day and that his lane was snow-covered. (N.T. Vol. I, at 94.)

"Well, I seen that the road was icy and snowy, and I was starting to, you know, because when you come down to that part of the road, you slow down, you know. and I could see there was snow and ice on the road, and when I started to come around the bend coming down the hill, the truck just veered off

to that, to the other lane. Instead of going with the turn, the truck just went, you know, into the other lane." (N.T. Vol. I, at 95.)

Defendant testified as well that his truck was in perfect condition. (N.T. Vol. I., at 96.)

Plaintiff testified that she saw defendant's vehicle coming towards her and that she did what she could to avoid a head-on collision:

"I saw this vehicle coming towards me, and I had come across this bridge where there's a creek and the bridge goes over this creek area. I'd come across that and proceeded a short ways up. I saw this vehicle coming, and I saw him, he was in my lane. He was not totally in my lane, but his truck, he had the wheels turned on his truck like he was trying to get it under control, but it was obvious that it wasn't going to do what he wanted it to do, and it just kept coming into my lane more and more. and I knew that if I didn't get out of the way that it was going to be a head-on collision." (N.T. Vol. I, at 20-1.)

From the testimony of the two participants, the jury could not reasonably have reached a verdict for defendant on the issue of liability. We find the jury's verdict to be against the weight of the evidence as presented.

We also find the jury's verdict to be against the law as it was explained by this court at trial. The jury completely disregarded the court's instructions as to the applicable sections of the Motor Vehicle Code. As to section 3301:

"The first one says you have to drive on the right side of the highway, and it is in the code and it says that 'Upon all roadways of sufficient width, a vehicle shall be driven on the right half of the roadway except as follows.' And then there are a number of exceptions that don't apply here." (N.T. Vol. II, at 44.)

"If the driver lost control of the vehicle as a result of his negligence or as a result of unsafe driving pattern, then he would be liable for crossing the highway. On the other hand, if it's something that happened without his negligence, then the other result would obtain, and he would not be liable for violation of this section or other sections." (N.T. Vol. II, at 45.)

Section 3302:

"Another section I wanted to call to your attention is one that, what to do when you meet a vehicle going in the opposite direction. Again, here I think the answer is obvious under the code. It says that, 'Drivers of vehicles proceeding in opposite directions shall pass each other to the right, and upon roadways having width for not more than one lane of traffic in each direction, each driver shall give to the other, at least one-half of the main travelled portion of the roadway as nearly as possible." (N.T. Vol. II, at 45-6.)

Section 3309:

"The next section has to do with roadways which are laned for traffic. It says, 'When any roadway has been divided into two or more clearly marked lanes for traffic, the following rules apply: Driving within a single lane: a vehicle shall be driven as nearly as practicable entirely within a single lane, and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.' " (N.T. Vol. II, at 46.)

Section 3361:

"The next section is one which applies to a number of situations and a number of varying situations. It has to do with what's called driving at safe speed. Now, I'm not talking about any particular speed limit here. This is driving at a safe speed in reference to the highway conditions. That section,