J-A20005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JARED MIELY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOBY HACKETT, HACKETT'S TREE | : | No. 224 WDA 2021 |
| SERVICE, INC., KENNETH WILSON | : | |

Appeal from the Order Entered February 9, 2021
In the Court of Common Pleas of Mercer County
Civil Division at No(s): 2019-00572

BEFORE: PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED: DECEMBER 22, 2021**

Jared Miely appeals from the trial court's order awarding summary judgment to Joby Hackett and Hackett Tree Service Inc. (collectively, "Hackett") in this personal injury matter arising from an accident that occurred during a tree removal operation.[1] We reverse.

Miely brings the following claims:

_____

[1] Miely concludes that the trial court's order is final and applicable to all parties based on additional defendant Kenneth Wilson's joinder in the summary judgment motion and the grounds articulated by the trial court. **See** Miely's Brief at 11. We agree that the procedural posture and reasoning of the trial court's order granting summary judgment is utterly incompatible with the claims articulated in Miely's complaint, and would bar any recovery from any other defendant. Further, the parties and the trial court all treat the order as dispositive of all of Miely's claims. Under these circumstances, we conclude the order is final and ripe for review. **See** Pa.R.A.P. 341(b)(1) ("A final order . . . disposes of all claims and of all parties").

1. Did the trial court fail to evaluate all evidence of record and reasonable inferences in the light most favorable to Miely, including the opinions of Miely's expert arborist?

2. Did the trial court err by ruling there are no genuine issues of material fact required to be determined by the jury?

3. Did the trial court err by ruling that Miely's negligence was equal to or greater than that of [Hackett] or that the injury was entirely the fault of Miely as a matter of law rather than leaving the allocation of liability to the jury?

Miely's Brief at 4.

Miely was helping Kenneth Wilson, a friend, by cutting, clearing, and burning detritus generated by Hackett's tree-removal operation.[2] Although usually Hackett worked with trained staff who wore personal protective equipment ("PPE"), Hackett did not bring any such equipment for Wilson and Miely (including hard hats or any head protection).

The trial judge granted summary judgment for the defense, dismissing the suit and concluding that "the indisputable evidence [Miely] walked under a tree where a lift was parked and a chainsaw was being used, while he was aware a woodcutting operation was ongoing renders it difficult to consider [that he] lacked subjective awareness of the risk of harm to which he was subjecting himself." Trial Ct. Op., 2/8/21, at 7.[3] The trial court focused

_____

[2] Wilson, who was joined as a defendant by Hackett, informed this Court by letter that he would not file a brief or take a position as to the present appeal. Letter of Michael Lang, Counsel to Wilson, of April 14, 2021.

[3] In lieu of a novel opinion per Pa.R.A.P. 1925, the trial court submitted its opinion on summary judgment. See Trial Ct. Op., 4/9/21, at 1 ("This Court hereby directs the Superior Court to the Opinion entered on February 8, 2021 *(Footnote Continued Next Page)*

especially on the fact that Miely was injured "not [by] a branch dropped from a great height but the last cut" to the tree being removed. *Id.* The trial court then acknowledged that assumption of risk requires subjective knowledge, and the record does not demonstrate such knowledge on Miely's part. *Id.* at 9.

Rather, the trial court granted summary judgment on a comparative negligence theory. It cited *Peair v. Home Ass'n of Enola Legion No. 751*, 430 A.2d 665, 669 (Pa. Super. 1981), in which this Court observed that "a case may arise in which it may be proper to hold as a matter of law that the plaintiff's negligence was equal to or greater than the defendant's, although it does seem likely that such a case will be rare."

> The weakness in [Miely's] case which makes him potentially subject to Summary Judgment on this issue is the lack of evidence showing, or producing an inference, [that Miely's] injury was the result of anything other than his voluntarily walking under a tree which he knew was being cut. Especially considering it was the last cut of the day and the relative height of the remaining portion of the tree.

Trial Court Opinion, 4/9/21, at 11. Ultimately, the trial court concluded the case was more than "potentially" subject to summary judgment on this issue, finding this to be the rare scenario in which the court should conclude as a matter of law that the plaintiff's negligence outweighed that of the defendant. *Id.*, *see also Peair*, 430 A.2d at 669.

---

(granting [Hackett's] Motion for Summary Judgment) . . . which fully sets forth the reasons and supporting evidence for the findings entered therein.").

> [S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.... When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party.

***Brewington for Brewington v. City of Philadelphia***, 199 A.3d 348, 352 (Pa. 2018) (citation omitted). The trial court "may only grant summary judgment 'where the right to such judgment is clear and free from all doubt.'" ***Id.*** "[A]n appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion." ***Id.*** (citations omitted).

Before this Court, Miely argues that the trial court failed to view the evidence and reasonable inferences therefrom in the light most favorable to Miely as the non-moving party. ***See*** Appellant's Brief, at 14. Miely also points out that the trial court seemingly ignored Miely's expert arborist report, which (if credited by a jury) would support a verdict that Hackett was negligent and injured Miely thereby. ***Id.*** at 14, 16.

Miely's arborist expert, Sam Kezar, submitted a report faulting Hackett for improperly failing to supervise Miely, including ensuring that he had the necessary knowledge, skill, and personal protective equipment (or "PPE") for the task, placing Miely in the riskiest role on-site, performing unsafe tree work by failing to use proper two-way communication, improperly using a chainsaw, failing to designate a drop zone, and other failures of awareness, technique, and control. ***See*** Miely v. Hackett Accident Review, Sam Kezar, August 10, 2020 ("Kezar Report"), at 3, 5-7. The expert concluded that Hackett lacked

awareness and understanding of industry safety standards, and his actions and failures to adhere to those standards "were the foundation for allowing the incident to occur and occur at the severity that it did." Miely's Brief at 10, quoting Kezar Report at 7.

Upon review of the record, we learn why Miely was there in the first place: to clear ground detritus generated by Hackett's operation, which Hackett knew. *See* Hackett's Motion for Summary Judgment, 5/1/20, at ¶¶ 7-9. In contrast, Hackett was responsible for cutting the trees down to approximately ten feet. *See id*., at ¶ 8. Taking all inferences in favor of Miely, as the non-moving party, we observe that Miely's duties would focus his attention on the ground, not up to where Hackett was cutting the trees

Hackett was a professional, working without paid assistants to save money, and because the client, Wilson, said that he would assist. *See id*., at ¶ 7. Miely was there as part of this assistance. *See id*., at ¶¶ 9-11. The "last cut" described by the trial court was not to the only tree being removed but was simply the last cut to that particular tree, one of several removed in this operation.

The trial court quoted, and then distinguished, the following standard:

However clear and indisputable may be the proof when it depends upon oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence.

- 5 -

Trial Ct. Op., 2/8/21, at 8 (citing **Borough of Nanty-Glo v. Am. Sur. Co. of New York**, 163 A. 523, 524 (Pa. 1932). The trial court set this rule aside, citing this Court, as follows: "**Nanty–Glo** prohibits entry of summary judgment based solely on the moving party's oral testimony. [ ] **Nanty–Glo** is inapplicable here for two reasons . . . Second, **Nanty–Glo** does not apply when the moving party supports its motion with admissions of the opposing party." **Id**. (citing **Wells Fargo Bank, N.A. v. Joseph**, 183 A.3d 1009, 1012 (Pa. Super. 2018), *rearg. denied*, May 11, 2018. The trial court then asserts that testimony from "all the parties, not only [Miely's], consistently supports . . . [Miely's] knowledge of the risk of walking under the tree being cut." **Id.**

The trial court does not cite to the record for its finding that Miely knew the tree was actively being cut and that he was walking in the drop zone. After reviewing the record, the only evidence we have found that supports the trial court's conclusion Miely was aware that he was in an active drop zone was Hackett's deposition testimony that he made eye contact with Miely and signaled that he was beginning a cut. However, this testimony is insufficient under **Nanty-Glo** to establish, as a matter of law, that Miely was aware of the cut, or that he knew he was in the drop zone. The credibility of Hackett's testimony is reserved for the finder of fact at trial and precluded the entry of summary judgment on this issue. **See Woodford v. Insurance Department**, 243 A.3d 60, 69 (Pa. 2020) (highlighting that oral testimony of the moving party, even if uncontradicted, is generally not sufficient to establish the propriety of summary judgment).

Further, we note that Miely claims to have no memory of the moments before his injury. It is therefore incorrect to characterize Miely as conceding that he was aware he was in an active drop zone when he was injured.

It seems beyond dispute that Hackett was operating differently than normal in proceeding with a crew of volunteers rather than his usual paid employees, and while Hackett directed his employees to use certain safety gear and procedures, he proceeded differently here. Miely's expert sees this choice to proceed without the standard safeguards as the genesis of the risk that culminated in Miely's injuries.

In this vein, we observe that the trial court does not mention, and seems to ignore altogether, Miely's expert arborist, Sam Kezar's report. To give insufficient weight to an expert report at this stage is erroneous. **See Bourgeois v. Snow Time, Inc.**, 242 A.3d 637, 654 (Pa. 2020) ("Because the trial court erred in not considering the expert reports, the Superior Court erred in not reversing the trial court on this basis and instead condoning the trial court's misapplication of the summary judgment standard by *sua sponte* rejecting the experts."). The Kezar Report reveals that based on annual death numbers, tree work is the fifth most dangerous job in the United States, and strikes from falling objects is the greatest risk in such work. Kezar Report at 7. Kezar concludes that Hackett "placed the most inexperienced person in the highest risk place on the job . . . in one of the highest risk jobs in the country." *Id.* He observes that in addition to failing to provide or insist on PPE for Wilson and Miely, Hackett failed to evaluate Miely's training level and fitness to work

safely in his assigned role. ***Id.*** Importantly, he faults Hackett for failure to designate a drop zone and failure to establish a clear two-way communication system to alert the volunteers as to drop risks as they arose that day. ***Id.*** "There are several key facts that point to Mr. Hackett's lack of safety understanding, awareness, and industry standards of safety procedures, as well as testimony of unsafe acts while performing tree work", he concludes. ***Id.***

We simply cannot agree that, as a matter of law, Miely's negligence has been established to be so great as to eclipse that of any defendant actor in this scenario. ***Peair*** summarized cases from several jurisdictions, remarking upon "a reluctance that has been expressed by other courts" in applying comparative negligence in the summary judgment context. ***Peair***, 430 A.2d at 668-69. Plainly, application of comparative negligence is a project of weighing: which is heavier; this, or that? Weighing of this type is the province of the ultimate finder of fact, and the ***Peair*** court readily found examples of this "reluctance" it noted. When the jury right is invoked, it is a jury that is called to weigh facts, and judges are loath to tread the jury's path. We conclude the present matter, like ***Peair***, is best weighed by a jury.

Order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2021