## Woodstream Corporation v. Pennsylvania Manufacturer's Association Insurance Company

*Hartman, Underhill & Brubaker,* for plaintiff.
*Charles E. Wasilefski,* for defendant.

ECKMAN, *J.,* February 16, 1982—

### PROCEDURAL HISTORY

On March 29, 1979, plaintiff, Woodstream Corporation, filed a complaint in trespass and assumpsit against defendant, Pennsylvania Manufacturer's Association Insurance Company. Plain-

tiff alleges that defendant unjustifiedly refused to defend and indemnify plaintiff in a products liability personal injury lawsuit in which Woodstream was joined as defendant in New York State. Following the filing of the complaint, the parties engaged in extensive discovery. On October 3, 1980, defendant filed a petition for an extension of time to join an additional defendant. The petition was dismissed by an opinion of Judge Wayne G. Hummer, Jr., of this court on January 30, 1981. Following a pre-trial conference, the case was listed for trial on September 28, 1981. On September 18, 1981, plaintiff filed a motion for partial summary judgment based only on defendant's liability. Pursuant to the motion, oral argument was held before this court on December 29, 1981. Plaintiff's motion is now before the court for disposition.

## FACTUAL HISTORY

PMA was Woodstream's liability insurance carrier for a period prior to 1966 through 1974. On March 21, 1977, Woodstream was served with a fourth party complaint joining it as a defendant in a products liability action in New York State. The lawsuit arose from an incident that had occurred in 1966 in which a child was injured in a swing set accident allegedly caused by a defective chain manufactured by Woodstream. Woodstream notified PMA of this action by forwarding the complaint on March 22, 1977. On March 24, 1977, Farrell Thompson, claims supervisor for PMA, retained the New York law firm of Jacobson & Schwartz and forwarded the pleadings to it with instructions to answer the complaint on behalf of Woodstream. Complaint, Exhibit C. On March 29, 1977, Ronald Jacobson, Esquire, acknowledged re-

ceipt of the file from PMA and notified PMA that there was no chain left that could be examined in order to determine Woodstream's potential liability. Schwartz Deposition, Exhibit 8.

Thereafter, on April 12, 1977, Jacob Schwartz, Esq., attended a pre-trial conference in the chambers of Judge Composto in New York during which the trial of the case was discussed. By letter of April 13, 1977, Mr. Schwartz notified PMA that Judge Composto had scheduled the case for trial on May 25, 1977. Mr. Schwartz also informed PMA that he was attempting to obtain certain correspondence between plaintiff and co-defendants in the products liability case that had transpired several years previously. Mr. Schwartz indicated that, if such correspondence did exist, "we may be in a position to discuss a disclaimer at this time." Schwartz Deposition, Exhibit 1. Two days later on April 15, 1977, Schwartz sent another letter to PMA informing them that he had obtained such correspondence dated November 7 and November 14, 1972 from attorneys from Hedstrom Company and Sears Roebuck & Company, who were co-defendants in the products liability case. In this letter, which was written following a telephone conversation between Schwartz and Farrell Thompson of PMA, Mr. Schwartz indicated that Woodstream had made admissions in the 1972 correspondence that were prejudicial to PMA's defense of the action and that Woodstream's subsequent inactivity had prejudiced PMA's case. Schwartz Deposition, Exhibit 2.

PMA subsequently informed Woodstream via letter on April 22, 1977 that it was disclaiming coverage under the policy due to late notice. PMA requested that Woodstream obtain other legal representation in that the firm of Jacobson &

Schwartz was being removed from its representation of Woodstream. Complaint, Exhibit D. Woodstream thereafter retained the firm of Dechert, Price & Rhoads which obtained the New York firm of Bleakley, Platt, Schmidt & Fritz to handle the case. The New York firm was successful in obtaining a continuance of the trial date and in curing the default that had been caused by the failure of Jacobson & Schwartz to answer the fourth party complaint on behalf of Woodstream. Following lengthy negotiations, during which PMA was kept informed of the proceedings, a compromise settlement was reached on June 2, 1978. Woodstream's share of the settlement was $28,500. In addition, Woodstream claims to have accumulated $130,241.10 in attorney's fees for which it seeks to hold defendant liable.

## DISCUSSION OF LAW

The principles to be applied in ruling upon a motion for summary judgment are well settled. Summary judgment should be rendered only ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled a to judgment as a matter of law . . ." Pa.R.C.P. 1035(b). Summary judgment should be granted only in the clearest of cases: Granthum v. Textile Machine Works, 230 Pa. Superior Ct. 199, 326 A. 2d 449 (1974). The court must view the evidence in the light most favorable to the non-moving party, and any doubts must be resolved against the entry of judgment: Yaindl v. Ingersoll-Rand Co., Etc., 281 Pa. Superior Ct. 560, 422 A. 2d 611 (1980).

Plaintiff contends that the law firm that defend-

ant hired to defend plaintiff in the New York case covertly worked against plaintiff's interest by gathering evidence which was subsequently used by defendant as the basis for its disclaimer of insurance coverage. Specifically, plaintiff asserts that it was led to believe that New York counsel had been retained by PMA to conduct plaintiff's defense in the products liability suit in New York, when in reality that same counsel was developing evidence to be used to enable PMA to deny coverage under the policy. Therefore, regardless of whether or not defendant's disclaimer is valid, plaintiff contends that defendant should be estopped from denying coverage under the insurance policy issued to plaintiff. In opposing the motion, defendant argues that an attorney-client relationship never existed between plaintiff and the firm of Jacobson & Schwartz, and even if it did, there are issues of fact that make this case inappropriate for summary judgment.

According to our research, it appears that the issue presented by this case is one of first impression in Pennsylvania and raises several ethical questions regarding the relationship between an insurance company, its insured and legal counsel hired by the insurance company to defend its insured as required by law.

Estoppel is a flexible doctrine "used to protect the reasonable expectations of the party who relies on another's course of conduct to the former's detriment in order to insure fundamentally fair dealing." Straup v. Times Herald, 283 Pa. Superior Ct. 58, 71, 423 A. 2d 713, 720 (1980). In Blofsen v. Cutaiar, et al, 460 Pa. 411, 333 A. 2d 841 (1975), the Pennsylvania Supreme Court reiterated the doctrine of estoppel as follows at page 417:

"When a party by his acts, representations, or

admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts . . . the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, aver a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct or statements."

The essential elements of estoppel include: (1) misleading words, conduct or silence by the party against whom estoppel is asserted and (2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert estoppel: Straup v. Times Herald, supra. The party asserting estoppel must have acted in such a way as to change his position prejudicially: Cheltenham National Bank v. Snelling, 230 Pa. Superior Ct. 498, 326 A. 2d 557 (1974); cert. den. 421 U.S. 965. See also Korpa v. Stuyvesant Life Insurance Company, 236 Pa. Superior Ct. 581, 351 A. 2d 682 (1975). In order to establish an estoppel, the burden is on the party asserting it to produce evidence which is clear, precise and unequivocal. Blofsen v. Cutaiar, et al, supra. That burden is made all the more difficult in a motion for summary judgment because each of the above elements must be shown to exist as a matter of law.

It is clear that when an insurance company undertakes the defense of its insured, it assumes a position of trust and confidence which calls "for the exercise of utmost good faith, particularly in view of the possible conflict of interest between the in-

surer and the insured" such as may later develop: Perkoskie v. Wilson, 371 Pa. 553, 556, 92 A. 2d 189 (1952). In Perkoskie, the Pennsylvania Supreme Court held that an insurance company was estopped from disclaiming liability after it had assumed the defense of its insured, failed to notify him of its adverse interest and then denied liability on a part of the judgment that was entered. The court held that it was "incumbent upon the company to inform its policyholder of its prospective adverse interest . . ." Perkoskie, supra, at page 557.

In the present case the facts indicate that approximately 20 days after Jacobson & Schwartz were retained by defendant, Mr. Schwartz first made defendant aware of the possible existence of correspondence which would allow defendant to disclaim coverage under the policy. This information was never shared with plaintiff. After the existence of the correspondence was confirmed by Mr. Schwartz, defendant disclaimed coverage one week later. It was at that point that plaintiff was informed that the disclaimer was based on late notice. These facts raise serious doubts as the propriety of defendant's conduct in light of its duty towards its insured. Even if we should conclude, however, that defendant, by its silence in the face of a conflict of interest, misled its insured, we do not believe that summary judgment is an appropriate remedy.

Defendant contends that plaintiff had a duty to notify defendant of the accident when plaintiff first received notice of the accident in 1972 or prior. This was some five years prior to the time defendant was notified in 1977. Furthermore, during the 31 day period after plaintiff first notified defendant of the pending lawsuit, the record indicates that Mr. Schwartz's contacts, if any, with plaintiff were

minimal. At no time does it appear that Mr. Schwartz solicited or obtained information from plaintiff to use on behalf of defendant as a basis for a disclaimer.

For these reasons, we believe that it is not a question of law but a question of fact for a jury's determination as to whether plaintiff was prejudiced by defendant's silence and subsequent act of a disclaimer which took place only 31 days after plaintiff first notified defendant of the pending lawsuit. Hence, the evidence is not so clear, precise and unequivocal as to invoke estoppel upon which summary judgment can be granted.

We believe that the cases from other jurisdictions cited by plaintiff wherein insurance companies were held to be estopped to deny coverage are distinguishable from the present case. In Employers Casualty Company v. Tilley, 496 S.W. 2d 552 (Texas, 1973), the insurance company had engaged an attorney to represent its insured in a personal injury suit but then brought a declaratory judgment action seeking to disclaim coverage based on alleged late notice. There the attorney served both the insurance company and the insured, despite the apparent conflict of interest, and for over eighteen months actively worked to develop evidence that was used by the insurance company to support its claim of late notice. The attorney took advantage of the confidential relationship between himself and the insured to develop this evidence at the request of the insurance company.

The Texas Supreme Court held the insurance company to be estopped from disclaiming coverage and found that Tilley had been prejudiced as a matter of law. The court noted that Tilley had been induced to make his own employes available for statements in the belief that the attorney was working in his own interests. These statements were

subsequently used by the insurance company to support its claim of late notice. The attorney had been engaged in compiling evidence over an 18 month period, when he had a duty to notify of the conflict immediately.

In the present case the question of prejudice is not so clear as in the Tilley case. The insured was not misled into making the correspondence that led to the disclaimer available to the attorney. This information was obtained from co-defendants. The existence of the correspondence was discovered while counsel was attempting to familiarize himself with the case. It was not a concerted effort over a long period of time by the attorney. Furthermore, the insurance company did not delay but proceeded to disclaim one week after it became aware of the existence of the correspondence.

Parsons v. Continental National American Group, 113 Ariz. 223, 550 P. 2d 94 (1976) is also distinguishable. In that case, the Arizona Supreme Court held that an insurance company was estopped as a matter of law from disclaiming liability where an attorney took advantage of the confidential relationship between the attorney and the insured to gather information to support the Company's denial of coverage. The prejudice that inured to the insured in that case was again clear.

By denying plaintiff's motion for summary judgment, we do not condone the actions of defendant, PMA, and Jacob Schwartz, since such conduct raises serious ethical questions regarding the propriety of their actions. We hold that the record does not establish that plaintiff has been prejudiced by defendant's silence as a matter of law and that a question of fact exists which decrees imposition of partial summary judgment to be inappropriate.

Accordingly, we enter the following

## ORDER

And now, February 16, 1982, plaintiff's motion for a partial summary judgment is dismissed.