**Linda BANOHASHIM, Appellee**

v.

**R.S. ENTERPRISES, LLC, Appellant.**

Superior Court of Pennsylvania.

Argued May 7, 2013.
Filed Sept. 24, 2013.

Andrew D. Sysak, Pittsburgh, for appellant.

Stephen P. Drexler, Pittsburgh, for appellee.

BEFORE: BENDER, GANTMAN and OLSON, JJ.

OPINION BY OLSON, J.:

Appellant, R.S. Enterprises, LLC, appeals from the order entered on July 25, 2012, granting Linda Banohashim's post-trial motion for a new trial on damages and denying Appellant's request for post-

trial relief. We vacate in part and remand.

On June 29, 2009, Linda Banohashim ("Ms. Banohashim") filed a complaint against Appellant, sounding in negligence. As Ms. Banohashim averred, at the time of her accident, she was leasing an apartment at Appellant's 65 East Main Street, North East, Pennsylvania, property. Ms. Banohashim's Complaint, 6/29/09, at ¶¶ 2–4. According to Ms. Banohashim, on December 9, 2007, she was walking down the rear stairs of the property when she stepped on "a wedge [that was] missing from one of the concrete [stairs]." *Id.* at ¶ 7. Ms. Banohashim averred that she then tripped, fell, and sustained serious injuries. *Id.* at ¶¶ 8–9.

After her accident, Ms. Banohashim brought suit against Appellant and claimed that Appellant was negligent for (among other things): "permitting the steps to be and remain in an unsafe, dangerous, and hazardous condition;" "failing to exercise ordinary care in the maintenance of the steps;" "failing to warn or otherwise notify [Ms. Banohashim] of the dangerous and/or defective conditions on the steps;" and, "failing to supervise or instruct [the] work of employees, servants, subcontractors, and/or agents as to the proper procedure to avoid creating a dangerous and/or defective condition on the steps." *Id.* at ¶ 11.

On December 22, 2011, Ms. Banohashim filed her pre-trial statement and declared that she intended to call civil engineer Ronald W. Eck, P.E., Ph.D. as an expert witness at trial. Within Dr. Eck's expert report, Dr. Eck opined: Ms. Banohashim's injuries were consistent with her version of the events; the steps in question were purposefully designed to have a "wedge" cut into the concrete—to accommodate the outlet of a drain pipe—but this design "was neither reasonable nor prudent;" the steps, as they existed, were "defective and

dangerous;" given the faulty design, Appellant should have either painted the area around the wedge "yellow or white to contrast it with the surrounding concrete" or installed a handrail over the wedge "to highlight the location of the discontinuity and to make it difficult for pedestrians to reach the area;" and, Appellant "failed to use reasonable care [and did not] follow prudent practices relative to the inspection and maintenance of the defectively designed and constructed steps." Expert Report of Ronald W. Eck, P.E., Ph.D., dated October 11, 2010, at 1–9.

Prior to trial, Appellant filed a motion *in limine* to preclude the testimony of Dr. Eck. In relevant part, Appellant claimed that Dr. Eck should not be permitted to testify as to any "design defects" in the stairs, as Ms. Banohashim did not claim that the stairs were negligently designed. Appellant's Motion *In Limine*, 1/13/12, at 7. Further, Appellant claimed that Dr. Eck should be precluded from testifying as to "issues involving foreseeability, causation[,] and damages." *Id.* at 9. The trial court denied Appellant's motion *in limine* on the morning of trial.

Following jury selection, trial began. During trial, Ms. Banohashim testified that, at the time of her December 9, 2007 accident, she had been living in Apartment 18 of 65 East Main Street, North East, Pennsylvania, for approximately four years. N.T. Trial, 6/12/12, at 57–58. Ms. Banohashim further testified that, at the time of the accident: she was "very familiar with the property;" she was aware of the fact that, in the rear of the apartment complex, "wedges" were cut out of some of the concrete steps to accommodate drain pipes; she knew where the wedges were positioned; and, she normally avoided walking "down the middle" of the steps, where the wedges were located. *Id.* at 42–45 and 58.

Regarding the accident, Ms. Banohashim testified that at approximately 3:00 p.m. on December 9, 2007, she left her apartment through the rear-building exit and saw a young girl crying near the rear steps. *Id.* at 45–46. According to Ms. Banohashim, she walked over to the girl and comforted her. Ms. Banohashim testified that, after comforting the young girl:

> I went to walk down the steps from there and I forgot about the drains being in between the apartment and the steps.... I started walking, I stepped down ... and just stepped right into [the drainage wedge with] ... [m]y left foot.

*Id.* at 47.

As Ms. Banohashim testified, when she stepped into the wedge, she immediately broke her left ankle. *Id.* at 48. This caused Ms. Banohashim to fall and land on her back. *Id.* According to Ms. Banohashim:

> [when I was] on my back[,] ... I [ ] leaned up and looked, and my foot was turned outwards at a really odd, horrible angle that it was impossible to be in. And I could see the drain and it was like right there. And it had some wet leaves in it.

*Id.*

Ms. Banohashim was taken to the hospital, where she underwent surgery to repair her broken left ankle. *Id.* at 50. As Ms. Banohashim testified, the surgeons "put two pins in one bone and they put a metal plate with screws in the other bone ... [a]nd they also placed a ... piece of donor bone in there." *Id.*

At the end of Ms. Banohashim's case, Appellant orally moved for entry of a compulsory nonsuit and claimed that Ms. Banohashim did not establish a right to relief. According to Appellant, Ms. Banohashim's own evidence proved that Ms. Banohashim was harmed by a "known and obvious condition on the land" and that Ms. Banohashim's contributory negligence was "the sole cause of the accident." N.T. Trial, 6/13/12, at 50–53. Following argument, the trial court denied Appellant's motion. *Id.* at 53.

Towards the end of the two-day trial, the parties submitted their proposed points for charge. Regarding the issue of comparative negligence, Appellant's proposed point for charge number 23 read:

> 23. The Court has already instructed you about what you may consider in determining whether [Appellant] was negligent, whether [Ms. Banohashim] was contributorily negligent, and whether such negligence, if any, was a substantial factor in bringing about [Ms. Banohashim's] harm. If you find, in accordance with these instructions, that [Appellant] was negligent and such negligence was a substantial factor in bringing about [Ms. Banohashim's] harm, you must then consider whether [Ms. Banohashim] was contributorily negligent. If you find that [Ms. Banohashim] was contributorily negligent and such contributory negligence was a substantial factor in bringing about [her] harm, then you must apply the Comparative Negligence Act, which provides:

>> In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff ... where such negligence was not greater than the casual negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff. [42 Pa.C.S.A. § 7102].

Under this Act, if you find that [Appellant] was causally negligent or at fault and that you find that [Ms. Banohashim] was also causally negligent or at fault, it is your duty to apportion the relative degree of causal fault between [Appellant] ... and [Ms. Banohashim]. In apportioning the causal fault, you should use your common sense and experience to arrive at a result that is fair and reasonable under the facts of this accident as you have determined them from the evidence.

If you find that [Ms. Banohashim's] causal negligence or fault was greater than the combined causal fault of [Appellant] you find to be at fault, then [Ms. Banohashim] is barred from recovery and you need not consider what damages should be awarded.

Appellant's Proposed Points for Charge, 5/16/12, at ¶ 23.

Of import to the case at bar, Appellant's proposed point for charge number 23 specifically (and correctly) states the point at which a plaintiff's contributory negligence will constitute a bar to recovery. In particular, the proposed point for charge declares:

contributory negligence shall not bar a recovery by the plaintiff ... **where such negligence was not greater than the casual negligence of the defendant** or defendants against whom recovery is sought.... If you find that [Ms. Banohashim's] causal negligence or fault was **greater** than the combined causal fault of [Appellant] you find to be at fault, then [Ms. Banohashim] is barred from recovery and you need not consider what damages should be awarded.

*Id.* (emphasis added); *see also* 42 Pa. C.S.A. § 7102; *Casselli v. Powlen,* 937 A.2d 1137, 1138 n. 1 (Pa.Super.2007) ("Pennsylvania's comparative negligence statute, 42 Pa.C.S.A. § 7102, is of the 'not greater than' variety; that is, so long as plaintiff's negligence does not exceed that of all defendants combined, recovery is not barred but is reduced proportionally").

Appellant also submitted a proposed verdict slip, wherein Appellant attempted to frame the issue of comparative negligence in the following manner:

5. Do you find that [Ms. Banohashim] was comparatively negligent with respect to the accident of December [9], 2007?

Yes ＿＿ No ＿＿

If the answer to Question 5 is "Yes", go to Question 6. If the answer to Question 5 is "No", proceed to Question 7.

6. Taking the combined negligence that was a substantial factor in bringing about the harm at 100%, what percentage of that causal negligence was attributable to [Appellant] and what percentage was attributable to [Ms. Banohashim]?

＿＿ [Appellant] % ＿＿ [Ms. Banohashim] %

If you find that [Ms. Banohashim's] negligence is greater than 50%, you should not answer any further questions and return to the courtroom.

7. State the amount of damages, if any, sustained by [Ms. Banohashim] as a result of the accident, without regards to and without reduction by the percentage of causal negligence, if any, you have attributed to [Ms. Banohashim].

[Ms. Banohashim] ＿＿＿＿ $

Appellant's Proposed Verdict Slip at 3–4.

Again, Appellant's proposed verdict slip (correctly) declares that Ms. Banohashim would be barred from recovery only if "[Ms. Banohashim's] negligence **is greater than** 50%." *Id.* (emphasis added).

The trial court denied Appellant's proposed point for charge number 23. How-

ever, when the trial court orally instructed the jury on the issue of contributory negligence, the trial court did not provide the jury with any instruction on whether (or at what point) Ms. Banohashim's negligence could bar her from recovery. *See* N.T. Trial, 6/13/12, at 103–129.

The trial court also rejected Appellant's proposed verdict slip. The trial court instead drafted its own verdict slip, which read:

> **Question 1:**
>
> Do you find that [Appellant] was negligent?
>
> Yes ____ No ____
>
> If you answer "NO", proceed no further and inform the tipstaff. If you answer "YES" to Question 1, proceed to Question 2.
>
> **Question 2:**
>
> Do you find that [Ms. Banohashim] was negligent?
>
> Yes ____ No ____
>
> If you answer Question 2 "YES", proceed to Question 3. If the Answer to Question 2 is "NO" proceed to Question 4.
>
> **Question 3:**
>
> Taking the combined negligence that was a substantial factor in bringing about the harm at 100%, what percentage of that causal negligence was attributable to [Appellant] and what percentage was attributable to [Ms. Banohashim]?
>
> Percentage of negligence attributable to [Appellant]:
>
> ____ %
>
> Percentage of negligence attributable to [Ms. Banohashim]:
>
> ____ %
>
> If you find that [Ms. Banohashim's] negligence is greater than 50%, you should not proceed further and inform the tipstaff. If [Ms. Banohashim's] negligence is less than 50%, proceed to Question 4.
>
> **Question 4:**
>
> State the amount of damages sustained by [Ms. Banohashim] as a result of [the] incident on December 9, 2007.
>
> | | |
> |---|---|
> | Past lost wages: | $ _____ |
> | Past & future pain and suffering: | $ _____ |
> | Past medical expenses: | $ _____ |
> | Past and future humiliation: | $ _____ |
> | Disfigurement: | $ _____ |

Verdict Slip at 1–3.

Of note, the above verdict slip contains a latent ambiguity. Specifically, the verdict slip declares: "[i]f you find that [Ms. Banohashim's] negligence **is greater than** 50%, you should not proceed further and inform the tipstaff. If [Ms. Banohashim's] negligence **is less than** 50%, proceed to Question 4." *Id.* at 2 (emphasis added). Thus, the verdict slip does not instruct the jury as to the proper course of action should the jury attribute negligence equally amongst the parties. Yet, neither Appellant nor Ms. Banohashim specifically objected to this ambiguity.

After deliberating for a little over an hour, the jury returned to the courtroom and submitted the following verdict slip, which was signed by the jury foreperson:

> **Question 1:**
>
> Do you find that [Appellant] was negligent?

Yes _X_ No _____

If you answer "NO", proceed no further and inform the tipstaff. If you answer "YES" to Question 1, proceed to Question 2.

**Question 2:**

Do you find that [Ms. Banohashim] was negligent?

Yes _X_ No _____

If you answer Question 2 "YES", proceed to Question 3. If the Answer to Question 2 is "NO" proceed to Question 4.

**Question 3:**

Taking the combined negligence that was a substantial factor in bringing about the harm at 100%, what percentage of that causal negligence was attributable to [Appellant] and what percentage was attributable to [Ms. Banohashim]?

Percentage of negligence attributable to [Appellant]:

_50_ %

Percentage of negligence attributable to [Ms. Banohashim]:

_50_ %

If you find that [Ms. Banohashim's] negligence is greater than 50%, you should not proceed further and inform the tipstaff. If [Ms. Banohashim's] negligence is less than 50%, proceed to Question 4.

**Question 4:**

State the amount of damages sustained by [Ms. Banohashim] as a result of [the] incident on December 9, 2007.

| | |
|---|---|
| Past lost wages: | $ _____ |
| Past & future pain and suffering: | $ _____ |
| Past medical expenses: | $ _____ |
| Past and future humiliation: | $ _____ |
| Disfigurement: | $ _____ |

Verdict Slip at 1–3.

Thus, the jury apportioned negligence equally between Appellant and Ms. Banohashim and, after doing so, the jury did not "proceed further and inform[ed] the tipstaff." *Id.* at 2. The verdict was then uttered in open court as follows:

The Court: . . . Question number [one], do you find [that Appellant] was negligent? The answer is, yes.

Question [two], do you find that [Ms. Banohashim] . . . was negligent? Yes.

Question number [three], percentage of negligence attributable to the defendant[, 50%]. The percentage of negligence attributable to the plaintiff is [50%]. Therefore, there is no award to the plaintiff, so say you all?

(Whereby, all jurors indicate, yes.)

N.T. Trial, 6/13/12, at 130–131.

Neither Ms. Banohashim nor Appellant objected to the verdict as uttered. *Id.* at 131.

On June 18, 2012, Ms. Banohashim filed a timely motion for post-trial relief and claimed that the verdict was against the weight of the evidence because: the jury concluded that Appellant's negligence caused Ms. Banohashim harm; the jury concluded that Ms. Banohashim's contributory negligence was "not greater than" Appellant's causal negligence (and thus, under our comparative negligence statute, Ms. Banohashim was not barred from recovery); and yet, the jury awarded Ms. Banohashim "zero damages" for her obvi-

ous injury. Ms. Banohashim's Motion for Post–Trial Relief, 6/18/12, at 1–3. According to Ms. Banohashim, the jury was not permitted to ignore her obvious injury and—since Appellant's liability was established—Ms. Banohashim claimed that she was entitled to a new trial, limited to the issue of damages. *Id.* at 3; *see also Neison v. Hines*, 539 Pa. 516, 653 A.2d 634, 638–639 (1995) (holding that a jury may not ignore "an obvious injury of the type that[,] ... human experience teaches[ us,] ... produces pain.... [T]hese obvious injuries include[ ] the broken bone") (internal quotations and citations omitted).

Appellant filed a timely cross-motion for post-trial relief on June 26, 2012. As Appellant claimed, the trial court erred in denying Appellant's motion for compulsory nonsuit and in denying Appellant's motion *in limine* to preclude Dr. Eck from testifying. Thus, Appellant claimed, it was entitled to a new trial. Appellant's Post–Trial Motion, 6/26/12, at 1–11. Appellant also claimed that a new trial was necessary on both liability and damages because:

> [when] the jury apportioned negligence at 50% between the parties, the jury did not even address the damages portion of the verdict slip under the presumption

that if they found 50% negligence against [Ms. Banohashim], she would not be entitled to recover at all against [Appellant].... This is not a case where the [j]ury simply found no recoverable damages and placed a zero in the damages portion of the [v]erdict [s]lip. Rather, [Appellant] believes and avers that the confusion within the [v]erdict [s]lip caused the jury to believe or presume that their determination equated to [Ms. Banohashim] not being able to recover in this case, which is why they notified the tipstaff at that point in time as instructed.... Since it is impossible to interpret the jury's actual intent regarding liability given the incorrect [v]erdict [s]lip, the only fair and equitable remedy is to grant a new trial on liability and damages in this case.

*Id.* at 12–13.

On July 25, 2012, the trial court entered an order that denied Appellant's motion for post-trial relief, granted Ms. Banohashim's post-trial motion, and ordered a new trial limited to the issue of damages. Trial Court Order, 7/25/12, at 1–4. Appellant filed a timely notice of appeal and now raises the following issues to this Court:[1]

---

1. The trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant complied and listed the five general issues that it currently raises on appeal. However, with respect to Appellant's **first numbered claim on appeal** (wherein Appellant claims that the trial court erred in granting Ms. Banohashim's motion "for a new trial on damages and denying Appellant's post-trial motion for a new trial on the issues of liability and damages based upon the trial court's improper and incorrect verdict slip"), Appellant's Rule 1925(b) statement explained this particular claim of error in greater detail and—as to the specific claim regarding the "improper and incorrect verdict slip"—Appellant claimed only that the trial court erred in **limiting** the new trial to the issue of damages.

*See* Appellant's Rule 1925(b) Statement, 8/30/12, at 6–8. In relevant part, Appellant's Rule 1925(b) reads:

> Since it is impossible to interpret the jury's actual intent regarding liability given the incorrect [v]erdict [s]lip, the only fair and equitable remedy was to grant a new trial on both the issue of liability and damages in this case.

*Id.* at 8. Moreover, we note that Appellant has never claimed that it was somehow entitled to a compulsory nonsuit as a result of the jury's equal apportionment of negligence. *See Int'l Diamond Imp., Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261 (Pa.Super.2012) ("[a] motion for compulsory [nonsuit] allows a defendant to test the sufficiency of a plaintiffs' evidence and may be entered only in cases where it is clear that the plaintiff has not established a

[1.] Did the trial court err in granting [Ms. Banohashim's] [p]ost-[t]rial [m]otion for a new trial on damages and denying Appellant's post-trial motion for a new trial on the issues of liability and damages based upon the trial court's improper and incorrect verdict slip[?]

[2.] Did the trial court err in denying Appellant's request for reconsideration of its [m]otion for [c]ompulsory [n]onsuit notwithstanding the jury's verdict based upon Pennsylvania's "open and obvious" doctrine[?]

[3.] Did the trial court err in denying Appellant's request for reconsideration of its [m]otion for [c]ompulsory [n]onsuit notwithstanding the jury's verdict based upon the fact that [Ms. Banohashim] was contributorily negligent as a matter of law[?]

[4.] Did the trial court err in permitting [Ms. Banohashim's] expert, Ronald W. Eck, to testify in this case as it failed to aid the jury in their determination as to whether [Appellant] was negligent for failing to maintain the property[?]

[5.] Did the trial court err in permitting [Ms. Banohashim's] expert, Ronald W. Eck, to testify as to the ultimate

issues in this case, since issues involving reasonableness, foreseeability, and causation were for the jury to decide[?]

Appellant's Brief at 5.

■ Appellant first claims that the trial court erred in limiting the new trial to the issue of damages, as the jury's verdict was ambiguous and the issue of liability was not "fairly determined." *Id.* at 13–25. Thus, although Appellant concedes that a new trial is necessary in this case, Appellant claims that the new trial must encompass both liability and damages.[2, 3] We agree.

■ "Trial courts have broad discretion to grant or deny a new trial ... [and,] absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1121–1122 (2000) (internal quotations and citations omitted). In addition, "[t]he trial court's decision whether to limit a new trial to a particular issue or grant a new trial as to all issues will not be reversed absent an abuse of discretion."

cause of action.... **[I]t is the duty of the trial court to make this determination prior to the submission of the case to the jury"**) (internal quotations and citations omitted) (emphasis added). Rather, Appellant's claims regarding the denial of its motion for a compulsory nonsuit centered upon Appellant's contention that: 1) as a matter of law, the condition that caused Ms. Banohashim harm was "open and obvious" and 2) since Ms. Banohashim admitted that she "fail[ed] to ... look where she was going and [failed to] avoid an alleged obvious danger, which she was admittedly conscious of, [Ms. Banohashim] clearly and unequivocally establish[ed] that she was contributorily negligent as a matter of law for any injuries she sustained as a result of this accident." Appellant's Brief at 26 and 38; Appellant's Rule 1925(b) Statement, 8/30/12, at 1 and 3–4.

2. Within Appellant's brief to this Court, Appellant claims in passing that Ms. Banohashim might have "waived [her] right to request a new trial on damages by failing to object at any point prior to or immediately after the verdict was entered." Appellant's Brief at 25. Appellant did not raise this claim in its Rule 1925(b) statement. *See* Appellant's Rule 1925(b) Statement, 8/30/12, at 6–8. Thus, Appellant has waived the claim on appeal. Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the [Rule 1925(b) s]tatement ... are waived").

3. "An order in a civil action or proceeding awarding a new trial" is an interlocutory order appealable as of right. Pa.R.A.P. 311(a)(6). Thus, we have jurisdiction to consider the merits of Appellant's first claim on appeal.

*Chiaverini v. Sewickley Valley Hosp.*, 409 Pa.Super. 630, 598 A.2d 1021, 1024 (1991).

▮▮▮ As our Supreme Court has held, "new trials may be limited to specific issues only when this procedure will be fair to both parties. Where the question of negligence or contributory negligence is not free from doubt, it is an abuse of discretion for the trial judge to grant a new trial on the issue of damages alone." *Gagliano v. Ditzler*, 437 Pa. 230, 263 A.2d 319, 320 (1970) (internal quotations and citations omitted); *Nogowski v. Alemo–Hammad*, 456 Pa.Super. 750, 691 A.2d 950, 958 (1997) (internal quotations and citations omitted). Specifically:

> a [trial] court may grant a new trial[ ] limited to the issue of damages[ ] [o]nly where (1) the question of liability is not intertwined with the question of damages, [a]nd (2) the issue of liability is either (a) not contested or (b) has been fairly determined so that no substantial complaint can be made with respect thereto.

*Gagliano*, 263 A.2d at 320; *see also Mirabel v. Morales*, 57 A.3d 144, 152 (Pa.Super.2012).

We have held that liability is "fairly determined" when "the court is convinced upon a review of the whole case that the jury [has] settled the issue as to responsibility fairly and upon sufficient evidence— so that dissociated from the other questions it ought to stand as the final adjudication of the rights of the parties." *Lambert v. PBI Indus.*, 244 Pa.Super. 118, 366 A.2d 944, 956–957 (1976) (*en banc*), quoting 58 Am.Jur.2d New Trial, § 27 (1971).

In the case at bar, we conclude that the trial court abused its discretion in limiting the new trial to the issue of damages, as the issue of liability was not "fairly determined" by the jury.[4]

As noted above, when the trial court instructed the jury in this case, the trial court did not provide the jury with any instruction on Pennsylvania's comparative negligence law. Thus, the trial court did not instruct the jury as to whether or when Ms. Banohashim's contributory negligence could bar her from recovery. *See* N.T. Trial, 6/13/12, at 103–129. The trial court also provided the jury with an ambiguous verdict slip, instructing the jury: "[i]f you find that [Ms. Banohashim's] neg-

---

4. Ms. Banohashim argues that Appellant has waived its first claim of error (wherein Appellant contends that—since the jury's verdict was ambiguous and the issue of liability was not "fairly determined"—the trial court erred in limiting the new trial to the issue of damages). Appellant's Brief at 13–25. According to Ms. Banohashim, since Appellant did not object to the ambiguous verdict slip or the jury's verdict, Appellant cannot now claim that the trial court erred in limiting the new trial to the issue of damages. Ms. Banohashim's Brief at 6–7. Ms. Banohashim's argument is fundamentally incorrect.

The question on appeal is **not** whether the trial court erred in granting a new trial; indeed, as stated above, both parties agree that a new trial is necessary in this case. Rather, the question on appeal is whether the trial court erred in **limiting** the new trial to the issue of damages. As we have explained, the

question of whether a new trial may be limited to damages asks whether "th[e] procedure [would] be **fair** to both parties." *Gagliano*, 263 A.2d at 320 (emphasis added). This concern with the principle of "fairness" demands that the court view the entirety of the underlying proceedings and inquire into whether a limited new trial would work an injustice to a party. If such a trial would be unfair or unjust, the court must order a new trial generally.

Given this fact, Ms. Banohashim's waiver argument plainly fails. Even though Appellant did not object to the ambiguous verdict slip or the jury's verdict, we may nevertheless consider whether the issue of liability has been "fairly determined" by a jury and whether the trial court erred in concluding that it would be **just** to limit the new trial to the issue of damages.

ligence is greater than 50%, you should not proceed further and inform the tipstaff. If [Ms. Banohashim's] negligence is less than 50%, proceed to Question 4 [and specify the damages]." Verdict Slip at 2.

The jury in this case then submitted a verdict slip that: declared Appellant's causal negligence to be 50%; declared Ms. Banohashim's contributory negligence to be 50%; and left completely blank the "damages" section of the slip. *Id.* at 1–3. Further, the verdict, as uttered, was simply:

The Court: .... Question number [one], do you find [that Appellant] was negligent? The answer is, yes.

Question [two], do you find that [Ms. Banohashim] ... was negligent? Yes. Question number [three], percentage of negligence attributable to the defendant; [50%]. The percentage of negligence attributable to the plaintiff is [50%]. Therefore, there is no award to the plaintiff, so say you all?

(Whereby, all jurors indicate, yes.)

N.T. Trial, 6/13/12, at 130–131.

From the above, it is impossible to determine whether the jury concluded that Ms. Banohashim's contributory negligence must completely bar her from recovery or whether the jury simply ignored an obvi-

ous injury and awarded Ms. Banohashim zero dollars as damages. Thus, it cannot be said that the issue of liability has been "fairly determined" by a jury and, since "the question of ... contributory negligence is not free from doubt, it [was] an abuse of discretion for the trial judge to grant a new trial on the issue of damages alone." *Gagliano*, 263 A.2d at 320.

■ On appeal, Ms. Banohashim takes issue with this Court's conclusion. According to Ms. Banohashim, the case at bar is governed by a line of precedent, wherein this Court held that "it is within the discretion of the trial court to order a new trial on the issue of damages alone ... [where a] jury apportion[s] liability at 50% to the plaintiff and 50% to the defendant but fail[s] to award any amount of damages to the plaintiff." Ms. Banohashim's Brief at 10. This line of precedent is composed of *Casselli*, 937 A.2d at 1141, *Nykiel v. Heyl*, 838 A.2d 808 (Pa.Super.2003), *Fillmore v. Hill*, 445 Pa.Super. 324, 665 A.2d 514 (1995), and *Bortner v. Gladfelter*, 302 Pa.Super. 492, 448 A.2d 1386 (1982). We, however, conclude that the case at bar falls outside of the above line of precedent.

In *Nykiel*,[5] the plaintiff was riding a bicycle and was struck by the defendant's

---

5. As is relevant to the case at bar, *Casselli, Nykiel, Fillmore,* and *Bortner* are factually akin to one another and contain similar legal conclusions. Specifically, the juries in *Casselli, Nykiel, Fillmore,* and *Bortner,* concluded that the defendant was 50% causally negligent and that the plaintiff was 50% contributorily negligent. Each jury then affirmatively awarded the plaintiff "zero dollars" in damages—for what was, in each case, an obvious, compensable injury. *See Casselli,* 937 A.2d at 1138 ("[t]he jury found that both [plaintiff] and [defendant] were each fifty percent negligent in causing [plaintiff's] fall, but, nevertheless, awarded [plaintiff] 'zero' damages"); *Nykiel,* 838 A.2d at 809–810 ("[t]he jury found that the [plaintiff] and [defendant] were both

50% negligent ... [but] awarded zero dollars as damages"); *Fillmore,* 665 A.2d at 515 ("[t]he jury ... attributed fifty percent of the causal negligence to each party ... [but] the jury found that the total compensable damages sustained by [plaintiff] from the accident was zero"); *Bortner,* 448 A.2d at 1388 ("[t]he jury concluded that [plaintiff] ... and [defendant] ... were both negligent and that their negligence was equally responsible for [plaintiff's] death ... [but, w]hen asked to state [the] amount of damages, if any, sustained by the plaintiff as a result of the accident ... the jury answered: 'No figure' ").

The respective plaintiffs in *Casselli, Nykiel, Fillmore,* and *Bortner* responded to the jury verdict by filing post-trial motions and claim-

vehicle. The accident caused the plaintiff significant injuries, including a broken leg. Following trial, the jury "found that the [ ] plaintiff and [defendant] were both 50% negligent[,] but ... awarded [the plaintiff] zero dollars as damages" for the obvious, compensable injury. *Nykiel*, 838 A.2d at 809–810. The plaintiff then filed a post-trial motion and requested a new trial limited to the issue of damages. The trial court granted a new trial as to both liability and damages and the plaintiff appealed to this Court. *Id.* at 810.

As the *Nykiel* Court held, since the jury was not permitted to ignore an obvious, compensable injury, a new trial was necessary. *Id.* at 811. However, we held that the trial court abused its discretion in ordering a general new trial, as "there was no need to [re-litigate] the issue of liability." *Id.* As we reasoned:

> The liability issue was fairly litigated and, given the arguments of both parties, would appear to have been fairly resolved by the jury's conclusion that both the [plaintiff] and [the defendant] were equally responsible for the accident while the additional defendants were zero percent responsible. Further, we fail to see how the [plaintiff's] injuries bear upon the issue of responsibility for the accident. As such, we see no need to re-litigate the issue of liability. Moreover, the jury's verdict here does not meet the definition of "compromise verdict".... Here, the jury did not return a verdict in a lesser amount than if

the liability issue was free of doubt. Rather, the jury seemingly carefully concluded that both parties were equally at fault, but then, either out of confusion or some other unexplained reason, simply disregarded the uncontroverted evidence as to the [plaintiff's] injuries and refused to award any damages.

*Id.* at 812.

Thus, in *Nykiel*, we were able to hold that the liability issue was "fairly resolved" by the jury, as the jury "carefully concluded that both parties were equally at fault, but then ... simply disregarded the uncontroverted evidence as to the [plaintiff's] injuries and refused to award any damages." *Id.*

By contrast, in the case at bar, it cannot be said that the issue of liability was "fairly determined"—with the jury "simply disregard[ing] the uncontroverted evidence as to the [plaintiff's] injuries and refus[ing] to award any damages." *Id.* First, in this case, the jury was not informed of the consequences of its negligence apportionment. Thus, in contrast to *Casselli, Nykiel, Fillmore,* and *Bortner,* the jury in the case at bar was not instructed that its equal apportionment verdict would, in fact, entitle Ms. Banohashim to recover in this case. As we have held, this particular omission directly affects the jury's liability determination. *See Peair v. Home Ass'n of Enola Legion Number 751,* 287 Pa.Super. 400, 430 A.2d 665, 670–672 (1981).

ing that a new trial was necessary, as the jury's "zero dollar" verdict was against the weight of the evidence. In *Casselli, Fillmore,* and *Bortner,* this Court held that the trial court erred in denying the post-trial motion for a new trial—and we remanded so that a new trial, limited to the issue of damages, could take place. *See Casselli,* 937 A.2d at 1141; *Fillmore,* 665 A.2d at 519; *Bortner,* 448 A.2d at 1389–1390. It was only in *Nykiel* that the trial court granted a new trial as to both

liability and damages and it was only in *Nykiel* that this Court concluded that the trial court erred in refusing to limit the new trial to the issue of damages. *Nykiel,* 838 A.2d at 813–814. Moreover, *Nykiel* is the only one of the four cited cases that provides any significant discussion on the question of when a new trial may be limited to the issue of damages. As such, in the body of this opinion, we will confine our discussion to *Nykiel.*

In *Peair*, the appellant claimed that the trial court erred when it instructed the jury on our comparative negligence law; specifically, the appellant claimed, the jury should not have known that, "if [the jury] found [the plaintiff's] degree of negligence greater than [the appellant's, the jury] was not to consider damages." *Id.* at 670. According to the appellant, the trial court should not have informed the jury of the consequences of the negligence apportionment, as such an instruction allows a jury verdict based upon "sympathy or a conscious desire to aid one side or the other." *Id.* at 671. Rather, the appellant claimed, the jury should simply "find[ ] the facts without regard to the ultimate outcome of the case [and] . . . ascertain the truth untainted by prejudice or desire to see one of the parties win or lose." *Id.* (internal quotations and citations omitted). We rejected this contention and specifically held:

> The jury should be informed of the consequence of its apportionment of negligence. **We regard such information as essential** if the jury is to be able to apply the equitable considerations and arrive at the compromises that are an inherent part of the jury system. . . . We note that [this] conclusion is the same as was reached by those who prepared Standard Jury Instruction Sec[tion] 3.03, which informs the jury of the consequence of its apportionment decision, and which the trial judge in the present case read to the jury. We approve that instruction.

*Id.* at 671–672 (emphasis added).

Thus, in *Peair*, we held that the jury **must** be informed of the legal consequences of its negligence apportionment, so that the jury may "apply [ ] equitable considerations and arrive at the compromises that are an inherent part of the jury system." *Id.* In the case at bar, however, the trial court failed to inform the jury of

the legal consequences of its negligence apportionment—and, when this failure is viewed in conjunction with the jury's particular actions in this case, it is apparent that the jury did not "fairly determine" the issue of liability.

As noted above, in this case, the trial court provided the jury with an ambiguous verdict slip, instructing the jury: "[i]f you find that [Ms. Banohashim's] negligence is greater than 50%, you should not proceed further and inform the tipstaff. If [Ms. Banohashim's] negligence is less than 50%, proceed to Question 4 [and specify the damages]." Verdict Slip at 2. The jury filled out the verdict slip and declared that causal negligence was equally shared between the parties. Importantly, after so concluding, the jury—**in fact**—did "not proceed further and inform[ed] the tipstaff." *Id.* From these actions, it appears as though the jury believed its verdict would **completely bar** Ms. Banohashim from recovery—and that the jury thus **could not** award Ms. Banohashim any damages.

The jury then uttered its verdict, declaring: "percentage of negligence attributable to the defendant; [50%]. The percentage of negligence attributable to the plaintiff is [50%]. **Therefore,** there is no award to the plaintiff." N.T. Trial, 6/13/12, at 130–131 (emphasis added). As was true with the jury's verdict slip, the verdict as uttered implies a causality between the jury's equal negligence apportionment and its verdict of "no award to [Ms. Banohashim]." *Id.* Thus, and again, it appears as though the jury intended for its equal apportionment of negligence to completely preclude Ms. Banohashim from recovery.

■ In contrast to *Casselli*, *Nykiel*, *Fillmore*, and *Bortner*—where the respective juries equally apportioned causal negligence and then knowingly proceeded to determine the amount of damages suffered

by the plaintiff—in the case at bar, the jury was not informed of the legal consequences of its negligence apportionment and the jury acted as though it intended for Ms. Banohashim's contributory negligence to bar her from recovery. Under such circumstances, it was an abuse of discretion for the trial court to limit the new trial to the issue of damages. Simply stated, the erroneous jury instruction, the ambiguous verdict slip, the jury's actions, and the uttered verdict refute the conclusion that "the jury [has] settled the issue as to responsibility fairly and upon sufficient evidence—so that dissociated from the other questions it ought to stand as the final adjudication of the rights of the parties." *Lambert*, 366 A.2d at 956–957. The only fair result is to order a new trial on both liability and damages.[6] Order vacated in part. Case remanded. Jurisdiction relinquished.

---

**6.** We note that we do not have jurisdiction to consider Appellant's remaining claims on appeal—wherein Appellant claims that the trial court erred in denying its request for a compulsory nonsuit and in denying its motion *in limine*. Appellant has appealed, as of right, from the interlocutory order granting Ms. Banohashim's post-trial motion for a new trial. Pa.R.A.P. 311(a)(6). While the trial court's July 25, 2012 interlocutory order is appealable under Pennsylvania Rule of Appellate Procedure 311, the order is not final and, thus, the order does not "draw into question the propriety of [the other] non-final orders" in the case. *See Quinn v. Bupp*, 955 A.2d 1014, 1020 (Pa.Super.2008). Rather, as to the remaining issues, the relevant orders must be appealable in their own right. Yet, as to the remaining issues, the relevant orders are not appealable as of right (*per* Pa.R.A.P. 311), are not appealable by permission (*per* Pa. R.A.P. 312), and are not collateral orders (*per* Pa.R.A.P. 313).

Further, with respect to Appellant's claims that the trial court erred in permitting Ms. Banohashim's expert, Ronald W. Eck, to testify in the case, we note that "[t]he grant of a new trial wipes the slate clean of the former trial." *Commonwealth v. Oakes*, 481 Pa. 343, 392 A.2d 1324, 1326 (1978). As our Supreme Court has held:

> When a court grants a new trial, the necessary effect thereof is to set aside the prior judgment and leave the case as though no trial had been held. By the operation of an order granting a new trial, the cause, in contemplation of law, is precisely in the same condition as if no previous trial had been held.
>
> Upon the grant of a new trial, therefore, [the parties are] entitled to a[w]holly new trial, whether before the same or a different judge, unfettered by the rulings, pro or con, made at the first trial, and with the right to have new rulings on evidence, points for charge and other matters which arise in the course of a trial.

*Id.* at 1326–1327 (internal quotations, citations, and corrections omitted).